KONRAD and another, Appellants, vs. ROGERS and others, Respondents.

*January 11 — January 31, 1888.*

*Municipal corporations: Erection of public buildings: Power to sell and purchase real estate.*

A city charter provided that "the city may have, purchase, and hold real and personal property sufficient for the convenience of the inhabitants thereof, and may sell and convey the same," etc.; also that "the common council shall have the power to purchase real estate and provide for the erection of a city hall, engine-houses, and other public buildings, provided the same is authorized . . . at any election called to determine whether such real estate shall be bought or such buildings erected." Pursuant to the latter provision the council was authorized "to purchase a site for a city hall and lock-up, and to erect such buildings." The council purchased a lot for $275, and it was conveyed to the city. Subsequently, the council bought another lot for $1,000, and conveyed to the vendors thereof the lot previously purchased, for the sum of $300, in part payment for the new lot. *Held,* that the council had power to make such new purchase and to issue orders on the city treasurer to pay the balance of the purchase price.

APPEAL from the Circuit Court for *Washington* County.

The case is stated in the opinion. This appeal is from an order denying a motion to vacate an order dissolving a preliminary injunction.

For the appellants there was a brief by *P. & T. O'Meara,* and oral argument by *Mr. P. O'Meara.* They contended, *inter alia,* that any act outside the powers granted by the charter is beyond the authority of a municipal corporation and therefore null and void. Dillon on Mun. Corp. sec. 55;

Konrad and another vs. Rogers and others.

*Robinson v. Mayor*, 34 Am. Dec. 625, and note; *Smith v. Newbern*, 16 Am. Rep. 766. When a charter prescribes to the corporation *a mode of contracting*, it must observe that mode, or the instrument no more creates a contract than if the body had never been incorporated. *Head v. Providence Ins. Co.* 2 Cranch, 127; *Zottman v. San Francisco*, 81 Am. Dec. 96; *McCracken v. San Francisco*, 16 Cal. 619; *Brady v. Mayor*, 16 How. Pr. 432; Dillon on Mun. Corp. secs. 373, 447; *Lauenstein v. Fond du Lac*, 28 Wis. 336; *Lord v. Oconto*, 47 id. 386; *Perrin v. New London*, 67 id. 416. The city having purchased the first lot for the use of the city as a site for a city hall and lock-up, it was held for a special purpose and the common council could not alien it. Dillon on Mun. Corp. sec. 445; *Gilman v. Milwaukee*, 55 Wis. 328; *Williams v. Smith*, 22 id. 566; *Warren v. Mayor*, 22 Iowa, 351. The council having purchased the first lot, the power conferred upon·it by the special election was exhausted. Laws of 1883, ch. 80, sec. 34, subd. 30; *Rogan v. Watertown*, 30 Wis. .259; *People ex rel. Attorney General v. Supervisors*, 34 Mich. 211; *Keyes v. Westford*, 17 Pick. 273. It would be absurd to hold that one election could confer the power *generally* on the council to buy, sell and exchange real estate *ad libitum*. The election only authorized the council to purchase land on which to build a city hall and lock-up. This did not authorize the council to purchase a site for an engine-house or other public buildings different from the building designated on the ballot voted at the election. *People v. Utica Ins. Co.* 8 Am. Dec. 243.

*H. W. Sawyer*, for the respondents.

ORTON, J. This suit is brought by the plaintiffs, on their own behalf and on behalf of others, tax-payers of the city of *Hartford*, to set aside and annul the sale and conveyance of a certain lot to said city by the defendants *Kendall* and others, and to restrain the defendants, the mayor, clerk,

treasurer, and aldermen of said city, from issuing or paying city orders to pay for the same, on the ground that the aldermen of said city had no power to make such purchase. The preliminary injunction to that effect was dissolved, and from an order refusing to vacate said order this appeal is taken.

Subd. 30, sec. 34, ch. 80, laws of 1883, of the charter of said city, provides that "the common council shall have the power to purchase *real estate* and provide for the erection of a city hall, engine-houses, and other public buildings; provided, the same is authorized by a majority of all the votes cast at any election called to determine whether such *real estate* shall be bought or such buildings erected; and the common council is authorized to call elections for such purpose." Sec. 75 provides that "the city may have, purchase, and hold real and personal property sufficient for the convenience of the inhabitants thereof, *and may sell and convey the same,*" etc. Under the power granted by these provisions, at a special election held in said city on the 28th day of May, 1885, "for the purpose of *authorizing the common council to purchase real estate for a site for a city hall and lock-up, and whether such buildings should be erected,*" said council was authorized, by a majority of all the votes cast at such election, "*to purchase a site for a city hall and lock-up, and to erect such buildings;*" and on the 23d day of July, 1886, said common council purchased of the plaintiffs a lot in said city for the sum of $275, and the city received a conveyance thereof. On the 25th day of May, 1887, the common council bought another lot in said city, of the defendants *Kendall & Co.,* for the sum of $1,000, and conveyed to them the said lot so first purchased of the plaintiffs, for the sum of $300 in part payment for the same, and intended to issue city orders to pay the balance of $700. The council evidently deemed the last mentioned lot more suitable for the purpose of a city hall and lock-up and other

public buildings than the one purchased of the plaintiffs, or at least such is the reasonable presumption, of which they are entitled to the benefit in this case. This last sale is the one sought to be annulled; and those are the city orders the issuing of which is sought to be enjoined.

The whole question is one of *power* in the council to make this last purchase. If the council had the power or authority to make the purchase, then most certainly their discretion, judgment, or prudence in making it, if honestly exercised, cannot be controlled or revised by the court. When the power to purchase a suitable lot for a city hall and lock-up is given, then the purchase is confided to the judgment and discretion of the council. This principle is elementary. *French v. Dunn Co.* 58 Wis. 403. It will be readily observed that this power to purchase real estate for a "city hall, engine-houses, or other public buildings" is very general and unlimited. Two matters only are to be submitted to a vote of the electors: (1) Whether the coun_cil shall have power "to purchase *real estate;*" and, (2) whether they shall have power "to provide for the erection of a city hall, engine-houses, or other public buildings." It is *real estate*, generally, and not confined to one lot or any certain number of lots in the city. This is left to the judgment of the council. The particular real estate is not specified or ascertained or passed upon by the vote. Its price or value is not fixed. So with the buildings. The kind, character, or dimensions, or cost is not fixed. These special matters are left to the judgment and discretion of the council. It would seem that this provision only contemplated the action of the electors to determine that the time had arrived for the council to act in the matter and to purchase real estate and provide for the erection of certain public buildings. All the rest is left to the council. This is the fair and natural interpretation of the language of the first provision.

The common council, in executing this power, bought a lot of the plaintiffs for $275. They ascertained, by the exercise of their judgment and discretion, that said lot was insufficient or unsuitable for the purpose. They sold it at a profit to the city of $25, and purchased other *real estate*, which they deemed suitable and sufficient. This method, or any other method, of accomplishing the result would seem to be within the judgment and discretion of the council. The result authorized is "the purchase of real estate" suitable for a city hall and lock-up. This they accomplished in their own way. The city does not seem to have lost anything, but rather gained by the trade. "The city may have, purchase, and hold real property," by sec. 75, and by the same section, "they may *sell and convey the same*." Is not this unlimited power to sell sufficient to authorize the sale of the lot purchased from the plaintiffs? It would seem to be most ample.

It is objected that their power was exhausted by the purchase of the first lot. It was not exhausted until they purchased real estate suitable for the. purpose. It is not complained that they sold the lot purchased from the plaintiffs, but only that they bought the lot from the defendants. The plaintiffs could not complain of the first, for the lot was sold at a profit; and the plaintiffs, as tax-payers, could not complain that such a bargain increased their burden of taxation. In respect to the purchase of the lot from the defendants, the only question is, Did the common council have the *power* to make it? It is not a question of the amount paid for it; for, as to that, the power is unlimited, as we have seen. If the second purchase had been made by an even trade for the lot purchased of the plaintiffs, then could the plaintiffs, as tax-payers, complain? Certainly not. Why not? Not because the costs had not been increased, but only because of the *power* to make the purchase. If the lot is suitable for a city hall and lock-up,—

and of this the council must be the sole judges,— does it render the power insufficient because it might also at some future time be a suitable and proper place for the location of other buildings for the use of the city, if by a vote of the electors such other buildings should be authorized? That consideration is foreign to the question. Was the lot suitable for a city hall and lock-up? The council determined that it was, and the lot is purchased, and thus the power is executed. The only question in the case is clearly determined by the language of the above provisions of the charter, and is not at all complicated. No argument or authorities could make it plainer. We think that the common council had the power to make the purchase they did from the defendants *Kendall & Co.*, and, if so, they had the power to issue orders on the city treasurer to pay for it. The circuit court properly refused to vacate the order dissolving the temporary injunction.

*By the Court.*— The order of the circuit court is affirmed, and the cause remanded for further proceedings according to law.