THOMAS McGUIRE v. ATLANTIC CITY AND FREDERICK HELMSLEY ET AL., COMMISSIONERS.

Argued November 1, 1898—Decided February 27, 1899.

The city having power under an act of the legislature to purchase land for the erection of public buildings thereon, and having no authority to sell any land so purchased, cannot, after having selected and purchased land in pursuance of such legislation, purchase other land not adjacent to the first purchase for the same purpose.

---

On *certiorari.*

Before Justices DEPUE, VAN SYCKEL and LIPPINCOTT.

For the prosecutor, *Clarence L. Cole.*

For the defendants, *Carlton Godfrey* and *Joseph H. Gaskill.*

The opinion of the court was delivered by

VAN SYCKEL, J.    The *certiorari* in this case is prosecuted to set aside an ordinance approved March 2d, 1898, authorizing the purchase of lands for public buildings at a cost of $175,000.

The legislation under which this action was taken is the act of 1887 (*Pamph. L., p.* 168); the act of 1890 (*Id., p.* 404); the act of 1891 (*Id., p.* 396).

The act of 1887, section 2, authorizes council to appoint three commissioners to select lands suitable for public buildings.

If the land selected is not owned by the city, power is given to condemn.

Section 3 gives power to the commissioners with the approval of council to sell the existing public buildings and the ground on which they are erected, if not needed, and to use the proceeds in the erection of new buildings.

By section 5 the whole expenditure shall not exceed $200,000 including the sum realized from any sale made in pursuance of section 3.

The act of 1890 limits the amount of expenditure and provides the mode of condemnation, and for submitting the question of location to the popular vote.

The act of 1891, section 3, enlarges the amount that may be expended to $200,000, and any sum not exceeding $50,000 derived from the sale of land by the commissioners.

Section 1 authorizes the city to erect buildings upon property " now owned " by such city, and to purchase other land necessary for the purpose.

Section 4 amends section 3 of the act of 1887 as follows : It gives the commissioners power to sell at public auction such public grounds and buildings and land on which the same stand, the property of the city, as the commissioners and common council think may be spared, and to apply the proceeds to the erection of other buildings and the purchase of other lands.

July 8th, 1895, an ordinance was passed providing for the erection of public buildings at a cost not exceeding $80,000,

and the purchase of additional land at a cost not exceeding $20,000, and for the appointment of three commissioners.

April 12th, 1897, an amended ordinance authorizes the expenditure of $23,000 for land.

The commissioners were appointed by the mayor and confirmed July 20th, 1896.

May 3d, 1897, the commissioners reported that they could procure a lot adjoining the lands owned by the city on which the existing public buildings were erected, for $23,000.

Common council directed the purchase to be made and bonds of the city to be issued to pay for the land.

The purchase was made and approved by council October 11th, 1897, and the bonds were thereupon issued in payment to the vendor.

January 31st, 1898, an ordinance was passed authorizing the purchase of lots not adjoining the former purchase at a cost of $175,000.

This ordinance was amended by an ordinance approved March 2d, 1898, providing that the building should not exceed in cost the sum of $80,000, and the lands to be purchased should not cost more than $175,000.

This ordinance authorizing the purchase of lands within the boundaries of Atlantic, Arctic, North Carolina and South Carolina avenues for $175,000, is the subject of this controversy.

The city, under the legislation referred to, had power to purchase through the commissioners lands suitable for their public buildings. It likewise had power to sell the existing buildings and land owned by it on which such buildings were erected, or such part thereof as was not needed.

The purchase of the $23,000 lot was the exercise of the power to purchase, and no power is given to the city to sell that lot.

The power to purchase is spent except it may be to buy additional land if necessary adjoining that already owned by the city.

Otherwise the city council of the year 1898 might pur-

chase a site distant from the $23,000 tract, and the council of 1899 might exercise the like power in purchasing still another lot, and thus the taxpayers would be burdened by the act of the council in dealing in real estate from year to year.

Cases holding that municipal corporations may sell and convey any real estate to which they have title are cases where the property is of a private nature, or where by statute they are invested with a general power to sell all lands held by the municipality.    2 *Dill. Mun. Corp.*, § 575, and cases cited. But in this case a special power is conferred for a specified purpose, and its exercise must be kept within the limits of the grant.    It is a power to purchase for one object and not a power to buy and sell.

No power being given to sell the land purchased under this legislation and to apply it to the purchase of other lands, it is apparent that it was not the purpose of these several acts to confer upon the city the power to make these unlimited and repeated purchases of land.

When the $23,000 lot was purchased the city was required to use that lot in the erection of the public buildings.

The case of *Konrad* v. *Rogers, 70 Wis.* 492, is relied upon by the defendants, but that case gives no support to the ordinance.    There the legislative act expressly gave the common council authority to purchase real estate sufficient for the convenience of the inhabitants of the city and to sell and convey the same.    The first lot purchased proved to be inadequate for the purpose, and thereupon the common council sold that lot and purchased another.

The power to do so was upheld on the language of the legislative act.

There is an entire absence of such authority in the legislation applicable to this case, and the action of the common council is without legal support.

The ordinance of March 2d, 1898, and the ordinance which it amends must be set aside, with costs.