C. E. BROOKS, Appellant, v. THE INCORPORATED TOWN OF BROOKLYN, the Mayor and Councilmen of said town, J. J. and HENRIETTA WATKINS, Appellees. C. E. BROOKS, Appellant, v. THE INCORPORATED TOWN, THE MAYOR and COUNCIL, and R. G. COUTTS and I. J. ORMISTON, Appellees.

**Municipal corporations:** POWERS: CONTRACTS. A municipal corporation has only such power as is expressly granted to it, or is fairly to be implied from those granted, or such as is indispensable to the declared objects and purposes of the incorporation; and any attempt by the corporation to make a contract without such authority is void.

**Same:** UNAUTHORIZED CONTRACTS. A municipal contract intended to promote some private or unauthorized purpose, made under pretense of authority, is void.

**Same:** PUBLIC EXPENDITURE: LEGALITY. Where the main object of a municipal expenditure is to serve the public needs the expenditure is legal, although it incidentally involves some expense which, if considered alone, would be unlawful; but where the main purpose of the expenditure is to promote a private end the same is illegal, although it incidentally serves a public purpose.

**Same:** PURCHASE OF GROUND FOR A PUBLIC BUILDING: SUBMISSION TO POPULAR VOTE. Where a municipality has on hand in its general fund sufficient means to purchase ground for the erection of a public building it may purchase the same and pay therefor out of such funds, without submitting the contract of purchase to a vote of the people.

**Same:** CONTRACTS FOR PUBLIC BUILDINGS: SUBMISSION TO VOTERS: FORM OF BALLOT. The submission to a vote of the people as one proposition the question of whether a contract approved by the council for the erection of a public building, and another for the plumbing, heating and lighting thereof shall be approved, is not invalid because containing two propositions and thus requiring the electors to vote for or against both; since the voter not desiring the construction of the buildings may vote in the negative, and if considering one of the contracts bad he may vote in the negative.

**Same:** CONSTRUCTION OF PUBLIC BUILDINGS: POWER OF MUNICIPALITY. A municipality has no power to erect at public expense a building designed chiefly as an opera house, with the usual arrangements and rooms incident thereto, although a portion of the building is to be used by the city for offices, fire department, etc.

*Appeal from Poweshiek District Court.*—HON. BYRON W. PRESTON, Judge.

THURSDAY, FEBRUARY 17, 1910.

Two actions brought by plaintiff, one to annul a contract entered into between defendant town and J. J. and Henrietta Watkins for the purchase of a lot whereon to erect a city building; to cancel the deed therefor; to compel a restitution of the funds paid for the lot; and to recover judgment therefor; and the other to annul and set aside certain contracts made by defendant town with defendants Coutts and Ormiston for the erection of an

alleged city building; to enjoin the erection of the building; to have an election at which the contract for the building was approved by the electors adjudged illegal; and for other equitable relief.   The trial court dismissed both petitions, and plaintiff appeals.   The cases were tried together in the lower court and are submitted here as one. First case *affirmed*.   Second *reversed* and *remanded*.

*John T. Scott* and *U. M. Reed,* for appellant.

*W. R. Lewis* and *John F. Talbot,* for appellees.

DEEMER, C. J.—There is little dispute in the facts, the questions presented, aside from one to be hereafter noted, being of law.   The town of Brooklyn is duly incorporated and has a population of about one thousand two hundred.   Like most Iowa towns it is a farming community, and aside from its social and mercantile affairs its interests are largely agricultural.   Prior to the transactions to which we are about to refer, it had no city hall, no fire station, no theater, no opera house, and no large public assembly hall.   Some of its public-spirited citizens conceived the notion that all these things might be joined in one building, and that a lot could be purchased and such a structure erected through a tax levy upon all the property within the town.   This proposition was submitted to the town council, and the plan met with the approval of the members thereof.   Steps were almost immediately taken to accomplish the wishes of the authors of the plan, and on July 3, 1908, the town council submitted to the electors at a special election the following proposition: "Shall the town of Brooklyn, Iowa, build a new town hall and assembly hall, at an expense of not to exceed $8,000 in addition to what may be realized from the old building?" By a vote of about two to one, this proposition was carried.   Almost immediately thereafter the council began

negotiations for a lot and also authorized the employment of an architect to design plans for the building. Before anything was done, however, and on September 4, 1908, the city, in levying the improvement taxes, levied a three-mill tax for a town hall sinking fund, which, as we understand, was duly certified to the proper authorities. On October 6th the council made a conditional contract with the defendants, Watkins, for the purchase of the lot in question, the contract to be void if both it and the proposition to erect a town building were not approved by the electors. However, on December 4th, the contract was resigned and reaffirmed without conditions, and the council directed the immediate consummation of the contract and the payment of the consideration out of the general funds of the town. Without a vote of the electors, save as heretofore indicated, the purchase price, to wit, $1,160, was paid out of the general funds and deed made to the city. On the 4th of December the city adopted the plans for the new building, and contracts were immediately entered into with defendants Coutts & Ormiston for the erection of a building according to these plans. At a special election held on January 11, 1909, the contracts so entered into were submitted to the electors; the proposition being as follows:

Notice to Voters: For an affirmative vote on any question submitted on the ballot make a cross (X) mark in the square after the word "Yes." For a negative vote make a similar mark in the square following the word "No."

| Shall the following public measure be adopted, to wit: | Yes | |
| --- | --- | --- |
| | No | |

Shall the contracts approved by the town council in relation to the erection of a town hall be adopted, as follows: [Here is set out the contract with R. G. Coutts, and immediately thereunder the contract with I. J. Ormiston.]

The contract with Coutts was for the erection of the building, and with Ormiston for the plumbing, heating, and lighting of the structure. But one proposition was submitted—that is to say, the electors had to approve both or neither. The vote of the electors was in the affirmative. This action to set aside the various deeds, contracts, etc., was commenced originally on December 24, 1908, and on February 15, 1909, plaintiff filed an amendment to the petition challenging the validity of the January election. The nature of the attack upon the proceedings is so well stated in appellant's brief that we here quote from it as follows:

The plaintiff, appellant herein, by these actions, seeks to have the purchase of said lot set aside, on the ground that the same is illegal and void, because the proposition therefor was not submitted to the voters for their approval; and he asks that the defendant be restrained from erecting the proposed building, because it is not such a building as the town has the power to erect, it not being designated or planned for municipal use; and he further asks that said election be set aside and held invalid, for the reason that the same was held to vote upon illegal propositions, and further, that the voters were not given an opportunity to vote for or against each of the contracts submitted, but were compelled to vote either for the adoption or against the adoption of both.

As to the building itself, we quote the following from appellant's brief:

The building as thus planned and approved is ninety feet in length and forty feet in width. It has a floor space, excluding boiler rooms, of almost six thousand square feet. Of this space, but one thousand two hundred square feet is to be used by the city government for offices, fire department, etc., leaving quite four thousand square feet of floor space for use for other purposes. The plans, as a whole, show that the building is designed for an opera house, it being provided with an auditorium capable of

seating four hundred or five hundred people, a box office, ticket window, stage, balcony, dressing rooms, etc.   The dressing rooms are marked "store rooms" on the plans, and have a floor space of about one thousand square feet, and are additional to the so-called fire department and apparatus rooms.   The plans show that these "store rooms" are to be "finished"—quite an unnecessary expense if they are to be used solely for storage purposes.

Blue prints, showing basement, first and second story plans, cross-sections, elevations, roof plans, etc., are in evidence and have been certified as a part of the record.

It is well settled, of course, that a municipal corporation has such powers and such only as are, first, expressly granted, or second, such as are fairly or necessarily implied 1. MUNICIPAL CORPORATIONS: powers: contracts. from those granted, or third, such as are essential to the declared objects and purposes of the incorporation.   As to the third, it is not enough that they be convenient; it must appear that they are indispensable.   In case of doubt the existence of power is denied by the courts.   *Clark v. Des Moines,* 19 Iowa, 199; *Logan v. Pyne,* 43 Iowa, 524; *Becker v. Water Works,* 79 Iowa, 419; *Brockman v. Creston,* 79 Iowa, 587; *Heins v. Lincoln,* 102 Iowa, 69; *Cherokee v. Perkins,* 118 Iowa, 405.   If there be no authority to make a contract under these rules, any attempt to do so is void. *McPherson v. Foster,* 43 Iowa, 48; *Cedar Rapids Water Co. v. Cedar Rapids,* 118 Iowa, 234; *Weitz v. Ind. Dist.,* 79 Iowa, 423.

Again, if the project is merely colorable under the pretense of some actual authority, but intended to promote some private or unauthorized purpose, courts will declare it illegal.   *Strahan v. Malvern,* 77 Iowa, 2. SAME: unauthorized contracts. 454; *In re Attorney-General v. Eau Claire,* 37 Wis. 400; *In re City v. McNab,* 67 Ala. 588 (42 Am. Rep. 118); *Coates v. Campbell,* 37 Minn. 498 (35 N. W. 366); *Allen v. Jay,* 60 Me. 124 (11 Am.

Rep. 185); *Mather v. City of Ottawa,* 114 Ill. 659 (3
N. E. 216); *Nerlien v. Brooten,* 94 Minn. 361 (102 N.
W. 867); *Sugar v. Monroe,* 108 La. 677 (32 South. 961,
59 L. R. A. 723); *Dorton v. Hearn,* 67 Mo. 301.

The rule with reference to public building has thus
been stated:

The validity of appropriations for the purpose of
erecting or repairing public buildings is sometimes con-
tested in the courts on the ground that the contemplated
**3. SAME:** accommodations exceed the actual needs of
**public** the corporation, and are to be rented in part
**expenditure:** to private individuals. The distinction drawn
**legality.**
in the authorities is this: If the primary object of a pub-
lic expenditure is to subserve a public municipal purpose,
the expenditure is legal notwithstanding it also involves
as an incident an expense which, standing alone, would
not be lawful. But if the primary object is to promote
some private end, the expenditure is illegal even though
it may incidentally serve some public purpose. It is
proper in constructing buildings to make suitable provi-
sion for prospective wants. Proceedings in raising and
expending money within the limits of the corporate powers
in these particulars will not be collaterally impeached
and held void because in the opinion of a court and jury
a less sum would have answered the immediate necessities
of the corporation or the money might have been more
judiciously and economically expended. Beach on Public
Corporations, vol. 1, section 646.

In *Worden v. New Bedford,* 131 Mass. 24 (41 Am.
Rep. 185), it is said: "The city could not erect build-
ings for business or speculative purposes, but having a city
hall, built in good faith and used for municipal purposes,
it has the right to allow it to be used incidentally for other
purposes, either gratuitously or for a compensation. Such
a use is within its legal authority, and is common in most
of our cities and towns. *French v. Quincy,* 3 Allen, 9."

In *Bates v. Bassett,* 60 Vt. 535 (15 Atl. 202, 1 L. R.
A. 166), it is said:

The fitting up of rooms for rent was an expense incidental to the building of the town hall.   The town has no right as a primary purpose to erect buildings to rent; but if in the erection of its hall for its proper municipal uses it conceives that it will lighten its burdens to rent part of its building, whereby an income is gained, no sound reason is suggested why it may not do so.   The true distinction drawn in the authorities is this:   If the primary object of a public expenditure is to subserve a public municipal purpose, the expenditure is legal, notwithstanding it also involves as an incident an expense, which, standing alone, would not be lawful.   But if the primary object is not to subserve a public municipal purpose, but to promote some private end, the expenditure is illegal, even though it may incidentally serve some public purpose.   This is the test where good faith is exercised in making the expenditure.   If a public purpose is set up as a mere pretext to conceal a private purpose, of course the expenditure is illegal and fraudulent.   There is nothing in this case that invalidates the action of the town in building its new town hall.   *Spaulding v. Lowell,* 23 Pick. [Mass.] 71.   Having elected to build, the town had on its hands an old building.   In the exercise of what seemed to them to be a wise discretion, the voters decided to repair it for rental purposes.   This is said to be illegal.   It would be if the primary object was to invest money in a building to rent.   The town could not purchase a building for rental purposes solely.   But here the town absolutely owns a building purchased or erected for its proper municipal purposes.   It no longer has use for it for municipal purposes.   Must it sacrifice its property, or may it not do with it what a prudent man would do with a building?  . . . It is no answer to say that the town would in the long run be as well off to give away its old building. The question was one for the town to decide for itself, and its decision made in good faith is final.

In that case, in repairing an old town building, the town fitted up and rented a part of the old structure for an opera house.

*Klingman v. City,* 153 Mass. 255 (26 N. E. 998,

11 L. R. A. 123), decides that it is not competent for a city to appropriate public money for the erection of a building to be used in part by a certain Grand Army post during its existence as an organization, since that is not a public purpose. During the course of the opinion the court said:

It is said that if a city has a public building already erected, which is larger than its present needs for municipal purposes require, it may allow portions of such building to be used for other purposes for the time being, either for a stipulated rent or price, or gratuitously; and, further, that in erecting a public building a city need not limit the size of it to actual existing needs, but may make a reasonable provision for probable future wants. All this, within proper limits, is true. *Worden v. New Bedford,* 131 Mass. 23 (41 Am. Rep. 185); *French v. Quincy,* 3 Allen, 9; *Spaulding v. Lowell,* 23 Pick. 71. But there may be some danger of extending this doctrine too far. Should a question arise whether a contemplated building exceeded what was allowable with reference to legitimate prospective needs, such a question would have to be determind on its own merits; and the good faith of the transaction and the soundness of the judgment shown in providing for future wants might have to be considered. No such question has arisen heretofore, or arises now. In the present case it is proposed to erect a building with the express purpose of devoting a portion of it to the use of the G. A. R. post, not temporarily, but as long as that organization may exist. . . . Without now considering whether in any respect this statute goes too far or is liable to abuse, it is sufficient to say that it refers only to existing public buildings, and by no means authorizes the erection of a building to be let to a Grand Army post at a nominal rent. In addition to *Mead v. Acton,* 139 Mass. 341 (1 N. E. 413), and cases there cited, the following, among others, may also be referred to as tending to support the views above expressed, in respect to the proper limits of the right of taxation. *Jenkins v. Andover,* 103 Mass. 94.

In *White v. Town of Stamford*, 37 Conn. 586, it is said:

> We do not doubt the power of towns to build town halls for their public meetings, and, if the building is solely for the purposes of a hall, the town within reasonable limits must judge for itself of the size and style of the structure. But it is obvious that the building complained of is not a mere town hall. It indeed contains a hall in its third story, but the other stories are to a considerable extent to be rented, in the expectation no doubt that the rents will ultimately pay wholly or in part the expenses of the entire structure. Something of the same kind on a small scale has sometimes been done without objection in the towns and cities of the State. It is sometimes incidental to a public building that portions of it are not needed for public purposes, and these are fitted up and rented, and the rents applied toward paying the expenses of the building. But in the present instance the rents are more than incidental. The enterprise evidently involves extensive arrangements for renting, and the selectmen of the town, or a committee for managing the premises, will have the control of important interests which seem to be rather private than public in their character and nature. A town is a public corporation, not adapted to carry on trade and rent property. Its citizens are members of the corporation not by choice, but by compulsion of law, and ought not to be forced into a partnership in carrying on business for gain. The impolicy of entrusting to town agents the management of private business is very obvious; and we think the Legislature has not by any general law conferred authority upon towns to erect buildings for rent, and also are of opinion that the resolution of 1868 can not be construed as giving authority to the town to erect such a structure as is being built.

These authorities seem to announce the law, as it is generally applied, in this country.

Going now to the exact questions presented, it will be observed that, while plaintiff concedes that the town had power to buy the lots, it could not pay for the same out

of the general funds of the city, and could not buy with-
out submitting the contracts to the electors

**4. SAME: purchase of ground for a public building: submission to popular vote.** as provided in sections 741j-741m of the Code Supplement of 1907, being a reprint of chapter 28 of the Acts of the Thirtieth General Assembly. The council evidently be-
gan its efforts to procure the lots and build the building under this law; but it afterwards abandoned the same and purchased the property and paid for it out of the general funds. Aside from this statute, the town had power to ac-
quire and hold real and personal property. Code, section 695. To purchase the necessary ground and construct buildings for a fire department and fire company. Code, section 716. To erect a city jail. Code, section 735. To purchase and pay for out of the general funds any lands for the various purposes, naming them, and including the purposes above named, and in all other cases where such purchase is or may hereafter be authorized. Code, section 880. Here is express authority to purchase real estate for the purpose of erecting a building for the fire depart-
ment or fire company and to pay for the same out of the general funds. Chapter 28 of the Acts of the Thirtieth General Assembly does not repeal these sections, unless by implication, and as such repeals are not favored, we must hold that the latter Act of the Legislature has refer-
ence to cases where the town has not in its general funds enough to pay for the grounds and is compelled to issue its bonds or warrants therefor to be paid at a future date. A sinking fund tax is a tax raised to be applied to the payment of the principal and interest of a public loan or obligation. *Union Pacific R. R. v. York Co.,* 10 Neb. 612 (7 N. W. 270); *Bank v. Grace,* 102 N. Y. 313 (7 N. E. 162); *Brooke v. City,* 162 Pa. 123 (29 Atl. 387, 24 L. R. A. 781). This construction harmonizes the entire law and was manifestly the one intended by the Legislature. It also finds support in *In re Cedar Rapids,* 85 Iowa, 39; *Diver*

*v. Savings Bank,* 126 Iowa, 691.   Entertaining no doubt of the power of the town to purchase and pay for the lot in question out of its general fund, the decree in the first case must be affirmed.

II.   The second case presents two questions:   The first being the sufficiency of the ballot; and the second, the nature of the building which the town proposed to erect.   Two con-

5. Same: construction of public buildings: submission to voters: form of ballot.

tracts were presented to the voters for approval; but the elector, by the form of ballot used, had to vote for or against both contracts.   He could not vote for one and against the other, save as he by reason of his objection to one should vote against both.   Did this invalidate the election?   Because but one object was sought, viz., the building of a town hall, the question under the rule announced in *Rock v. Rhinehart,* 88 Iowa, 37, must be answered in the negative.   If the voter did not wish to have the town hall erected, he would vote in the negative. If he thought that one of the contracts was bad he would also vote no and as said in *Rock's* case, "A careful reading of the ballot under consideration, in the light of facts connected with the election, shows marked distinction between this and the cases cited.   There is but one object —the erection of a courthouse—while in those cases there were two or more.   Following *Gray v. Mount, supra* [45 Iowa, 591], we must say that, there being but one object, there was but one proposition."

Moreover, section 741m of the Code Supplement of 1907 gives the form of the ballot as follows: "Proposition to be submitted at said election and the form of ballot shall be: Shall the contract or contracts approved by the city or town council in relation to the purchase of buildings or grounds or erection of buildings be adopted? The proposition shall be printed and placed on the ballots and the voter shall designate his choice and the election shall be conducted in the manner provided in the chapter .

on elections." Code Supp. 1907, section 741m. Having followed the language of the statute the ballot should be approved.

We are abidingly satisfied that the building, as planned, is not such an one as the town had authority to build. It is in fact an opera house with all the necessary equipment for such a building. The town offices and the place for the fire department were mere incidents to the building. However desirable it may be for rural towns to have a large assembly hall or opera house, it is not within the power of the town council to build it. The officials are not ordinarily selected to manage theaters or opera houses, and in view of the fact that when so managed the town becomes responsible for their care and safety, and is liable to any one injured by or through the neglect of any of the officials or employees of the city, it is a burden which should not be assumed. There was no need for such a building for municipal purposes, and it is but a thin disguise to cover a purpose not authorized by law. The burdens of taxation are heavy enough without entering upon any such hazardous enterprises as are here proposed. Our form of city government is representative in character and is in no sense like the New England town meeting. Where that system of government obtains a large assembly hall is no doubt necessary; but there is no occasion for one where all our elections are by ballot. The room provided in this building was large enough for a county courthouse, and we find nothing in the statutes which will justify such a building. Moreover, we are satisfied that the real intent was to avoid the statutes to which we have referred, and it is our duty to prevent any such evasions.

6. SAME: construction of public buildings: power of municipality.

It follows that the relief asked in the second case should have been granted. The decree in that case will therefore be reversed, and the cause remanded for a decree

in harmony with this opinion. Each party will pay one-half the costs of the appeal.

First case *affirmed* and second case *reversed* and remanded.