First Wisconsin National Bank of Milwaukee, Respondent, vs. Town of Catawba, Appellant.

*February 13—March 11, 1924.*

*Towns: Power to erect town hall: Nature of building: Incidental purpose: Community centers: Loan made by town: Constitutional requirements: Ultra vires: Money loaned in good faith: Trial: Money had and received: Mixed question of law and fact: Finding by court: Weight on appeal.*

1. An action for money had and received is an action at law and not. in equity, though the implied contract arises out of equitable considerations.  p. 223.
2. In an action at law involving the question whether the primary object in building a town hall was to serve a public municipal purpose, and there being practically no conflict in the evidence, the court, having before it all of the town records as well as the plans for the building, was not bound by oral testimony as to the primary purpose of its construction, or by a finding of the jury, the question being a mixed one of law and fact involving a consideration of the statutes as well as the nature of the building; and a finding of the trial court, notwithstanding the verdict of the jury, is sustained under the rule that its decision should stand unless this court is clearly convinced that it is wrong.  p. 224.
3. Municipal corporations and towns, being only *quasi*-corporations, have no powers except those expressly conferred or necessarily implied from the power conferred; but statutes expressly conferring powers on towns or other municipal corporations should be so construed as to carry out the legislative purpose.  p. 224.
4. Sub. (9), sec. 60.18, Stats., empowering towns "to raise money to purchase or build a town hall or other building for the use of the town," while not authorizing a town to borrow money for the erection of a building to be used wholly for commercial or private purposes, vests a large discretion in its voters as to the kind of a building to be erected; and a town has power to borrow money to erect a town hall, though it was so designed as to be capable of being used for purposes of recreation as well as for official business.  p. 228.
5. Such power is not limited by sec. 43.51, Stats., providing for the organization of community centers, which may be composed of distinct municipalities with power to build community houses, or by sec. 43.49, authorizing a village or city by ordinance to provide for recreation and amusement buildings.  p. 230.

6. Where there was no present annual tax levied for the purpose of meeting payments of principal and interest on money borrowed by a town, the loan was not made in conformity with the rule prescribed by sec. 3, art. XI, Const.  p. 231.
7. There being no moral turpitude involved, and the town having the power to use the proceeds of the loan represented by plaintiff's note for the purposes intended, and having been enriched by the expenditure, the doctrine of *ultra vires* cannot be invoked to the injury of one who acted in good faith relying on the transaction; and irregularity in the proceedings does not constitute a defense to the note.  p. 232.
8. The town having borrowed money and expended it, as it had power to do, for a town hall, is liable therefor on an implied promise, the loan having been made in good faith, though the town had not, before or at the making of the loan, provided for payment by taxation, as required by sec. 3, art. XI, Const. p. 233.
     ESCHWEILER, J., dissents.

APPEAL from a judgment of the circuit court for Price county: E. W. CROSBY, Judge.  *Affirmed.*

*W. K. Parkinson* of Phillips, for the appellant.

For the respondent there was a brief by *Miller, Mack & Fairchild,* and oral argument by *Paul R. Newcomb,* all of Milwaukee.

JONES, J.   This is an action brought by the plaintiff to recover on a note for $11,000 loaned to the defendant on the representation that the money was to be expended in building a town hall.

At the annual town meeting of the defendant in April, 1920, a motion was passed authorizing the construction of a new town hall to cost approximately $10,000, and the town board was authorized to make the loan.   The building was not constructed during that year, and at the town meeting of 1921 the minutes of the last town meeting were approved and a motion was passed authorizing the town board to procure a loan of $11,000 for one year to obtain money to be used in building a town hall.   The motion contemplated a loan from the state trust fund, but that a temporary loan of $11,000 be made.   Proceeding under sub.

(9), sec. 60.18, Stats., a request of the requisite number of freeholders was delivered to the town clerk asking that a special meeting of electors be called for the purpose of submitting the proposition of raising the money. Notice of the special meeting was duly given. The proposition to procure a loan of $11,000 was adopted by the electors. The referendum ballot fully stated the purpose of the loan.

After the annual town meeting of 1920 a building committee was appointed to investigate, in conjunction with the board of supervisors, the kind of town hall which should be built, and it was decided to build one similar to the town hall of Downing, Wisconsin. As found by the trial court:

"They adopted plans for the building of a town hall ninety feet long and thirty-six feet wide, to be of brick veneer construction: The building consists of a basement and main floor. In the basement is a council room, fire hall, store room, banquet hall, and kitchen. The main floor has an assembly hall with a seating capacity of 300 and a gallery with a seating capacity of 65. At the front of the assembly hall is a stage, and off of the stage are two dressing rooms and a store room. Toilets are provided in the building, and in front of the building or entrance to the auditorium there is a ticket office and cloak rooms. The town built a town hall in accordance with these plans, but all of the interior work has not been completed."

At the annual town meeting in April, 1922, the minutes of the annual town meeting of 1921 and of a special meeting were approved, and a motion was passed appropriating $1,500 for equipping the new town hall. The original note was twice renewed by giving new obligations.

The complaint was in two counts: one was an action for money had and received, and the other on the note. The answer alleged that the loan was obtained by the town officers without authority; that no provision was made for its payment as required by the constitution and statutes,

and the money was expended for purposes beyond the authority of the officers and the town.

The court submitted the following question to the jury, and the answer was "No:" "Was the primary object in building the town hall in question to subserve a public municipal purpose?"

On motions the court determined to decide the case "without reference to the special verdict returned by the jury, for the reason that the issue presented in this case is one of fact and law to be determined by the court," and the court rendered judgment for the plaintiff in the sum of $11,000 and interest.

We agree with counsel for defendant that the action for money had and received is an action at law. Although the implied contract in such actions arises out of equitable considerations, the action is legal and not in equity.

From this premise counsel argue that since there was submitted to the jury the question whether the primary object in building the town hall was to subserve a public municipal purpose, the court was bound by the answer.

There was practically no conflict in the evidence. Although there was some testimony that some persons expected that the building would be used for purposes of recreation as well as for the official business of the town, this was apparent from the nature of the building itself.

At all town meetings the vote was for a town hall. The request by freeholders for a special meeting related to the building of a town hall. The officers of the town represented to plaintiff that the building was to be a town hall. The equipment was voted for a town hall.

The trial court had all the records before him as well as the plans for the building, and other facts, and we do not consider that he was bound by the testimony of witnesses given after the building was erected as to the primary object of its construction. This was largely a ques-

tion of mixed law and fact involving consideration of the statutes as well as the nature of the building.

We conclude that the court was justified in making the finding as to the primary object in erecting the building notwithstanding the verdict of the jury. In so holding we are following the rule often declared that the decision of the trial court should stand unless we are clearly convinced that it was wrong. *Kanass v. C., M. & St. P. R. Co.* 180 Wis. 49, 192 N. W. 383; *Smiegil v. G. N. R. Co.* 165 Wis. 57, 160 N. W. 1057; *Slam v. Lake Superior T. & T. R. Co.* 152 Wis. 426, 140 N. W. 30; *Riger v. C. & N. W. R. Co.* 156 Wis. 86, 144 N. W. 204; *Powell v. Ashland I. & S. Co.* 98 Wis. 35, 73 N. W. 573.

One of the most important questions in the case is whether under the statutes the town had the power to construct the building in question. It is well settled that municipal corporations have no powers except those expressly conferred or necessarily implied from the power conferred, and since towns are only *quasi*-corporations the rule applies to them with especial force. But when the statutes have expressly conferred powers upon towns or other municipal corporations, those statutes should be so construed as to carry out the legislative purpose.

The two following statutes are relied on by plaintiff's counsel as conferring this power:

"Each organized town is a body corporate and empowered to sue and be sued; to purchase, take and hold real and personal property for public uses and convey and dispose of the same; and to make all contracts necessary and convenient for the exercise of its corporate powers and any order for the sale or disposal of its corporate property which the inhabitants thereof may deem expedient. It shall be designated in all actions and proceedings by its name as 'Town of ——.'" Sec. 60.01, Stats.

"The qualified electors of each town shall have power at any annual town meeting by vote:

"To raise money to purchase or build a town hall or other building for the use of the town, or to unite the same with

the money of any corporation or society doing business or located in such town, for the purpose of building or purchasing such hall or building; but no such vote shall be taken except by ballot nor unless a request in writing signed by at least twelve freeholders of such town shall have been delivered to the town clerk twenty days before the holding of such meeting, asking that such proposition be submitted to a vote of the electors of the town at such town meeting, and setting forth the amount of money which they desire shall be raised by the town for that purpose and whether the same shall be raised by a direct tax or the issue of bonds, and if the proposition be to issue bonds it shall state the denomination thereof, the time and place of the payment of the principal and interest, and the manner in which and by whom the same shall be negotiated; . . ." Sub. (9), sec. 60.18, Stats.

The second of these statutes was the one under which the town proceeded in borrowing the money and erecting the building.

Counsel for defendant earnestly argues that neither of these statutes affords authority for the action of the town; that the plans and mode of construction clearly show that the main purpose was not the erection of a hall for the uses of the town, but the erection of a building for public entertainment and amusement.

To maintain this contention counsel cites the following authorities: 1 Beach, Pub. Corp. § 646; *Brooks v. Brooklyn,* 146 Iowa, 136, 124 N. W. 868; *Wheelock v. Lowell,* 196 Mass. 220, 81 N. E. 977; *Smith v. Raton,* 18 N. M. 613, 140 Pac. 109. The following is the quotation from the first authority above cited:

"If the primary object of a public expenditure is to subserve a public municipal purpose, the expenditure is legal notwithstanding it also involves as an incident an expense which, standing alone, would not be lawful. But if the primary object is to promote some private end, the expenditure is illegal even though it may incidentally serve some public purpose. It is proper in constructing buildings to make suitable provision for prospective wants. Proceedings in

raising and expending money within the limits of the corporate powers in these particulars will not be collaterally impeached and held void because in the opinion of a court and jury a less sum would have answered the immediate necessities of the corporation or the money might have been more judiciously and economically expended."

The authority cited from Iowa is especially relied on. In that case it was held that a town has no authority to construct a building for an opera house or assembly hall where the form of government is representative and not democratic, although it incidentally provides for accommodation in it of the fire department and town offices. In the opinion it was said:

"Our form of city government is representative in character and is in no sense like the New England town meeting. Where that system of government obtains, a large assembly hall is no doubt necessary; but there is no occasion for one where all our elections are by ballot." *Brooks v. Brooklyn,* 146 Iowa, 136, 148, 124 N. W. 868.

In the Massachusetts case cited there was a bill in equity to prevent the building of a public hall to take the place of another which had been destroyed by fire. It was alleged that the defendant already had a hall with sufficient accommodations for the mayor and public boards and officers, and that the proposed hall was intended to be used as a place for holding theatrical exhibitions, dances, and other amusements. The former hall had been used for political rallies, conventions, and other public meetings of citizens, and had from time to time been rented for purposes of amusement and instruction. It was held that the fact that the building had been also let for private uses when not required by the public needs did not affect the general legal purpose, and that if the motive for the erection of the hall was a strictly public use, then the expenditure for it was legal, although incidentally it may be devoted occasionally to uses which are not public. If, however, the project of the defendant

city was merely colorable, masking under the pretext of a public purpose a general design to enter into the private business of maintaining a public hall for gain, or devoting it mainly to any other than its public use as a gathering place for citizens generally, such an attempt would be a perversion of power and a nullity and no public funds could be appropriated for it. In the opinion there is discussion of the importance of free discussion of public affairs and the need of suitable buildings for that purpose. The bill was dismissed.

The last of the cases above cited was also an action to restrain the erection of a municipal building on the ground that it was in fact to be used as an opera house. The trial court found that the building was to be erected as an opera house and that all other uses were merely incidental. On appeal the decision was affirmed, although the view was expressed that if the primary object had been a municipal purpose the fact that the building might be incidentally used for theatrical purposes might not render its erection invalid, and that in such case the expenditure should not necessarily be limited to present needs.

We shall not discuss the large number of cases in other states which give to statutes similar to our own a construction which seems to justify the erection of buildings for municipal use although it is intended also to use them for other useful incidental purposes. Under such statutes as our own the decisions support the view that a municipality may to a reasonable extent forecast the future and future needs, and in the exercise of an honest discretion may provide such building and rooms for public use as the interests of the municipality require; that the occasional letting of those parts of a building which are not in actual use by the municipality may be incidental and subsidiary to the objects for which it was constructed, and does not take away its character as a public building.

When the expenditure is for a lawful purpose the courts are not disposed to interfere with the discretion of the electors of a town honestly exercised, but leave that discretion where the legislature has reposed it.

In most of the states for many years town and city halls have been used not only for the purely official business of municipalities, but, when adequate, for assemblies of citizens for the discussion of questions affecting the general welfare. The statute now in question authorizes towns "to raise money to purchase or build a town hall or other building for the use of the town." Doubtless this language would not authorize a town to borrow money for the erection of a building to be used wholly for commercial or private purposes, but it is language vesting a large discretion in the voters as to the kind of a building to be erected for the public use.

There must be some flexibility in the meaning of the words "use of the town." The right to assemble and discuss questions of general and local interest has always been regarded as a sacred right under our form of government. We have statutes creating new forms of taxation and new modes of controlling public utilities. We have statutes giving to women active participation in governmental affairs, and other statutes affecting in many ways the daily life of the citizen. Such changes as these make free discussion of public affairs no less sacred but more important than formerly.

New modes of transportation make it possible for those more remote from the public building of a town to freely enjoy its benefits, while under former conditions the privilege would have been of little value.

Unlike the system of town government referred to in the Iowa case above cited, our system is one of pure democracy in which every voter may participate in the town meeting, and such meetings often excite the most lively interest and

are largely attended. Accommodations and conveniences in public buildings which would have been regarded as extravagant luxuries two generations ago are now deemed necessities.

There are numerous statutes in the state relating to public buildings which indicate that recreation and innocent amusement for the public are not repugnant or foreign to the legitimate use of public buildings erected by towns, cities, and villages. If public officials allow public buildings to be devoted to illegitimate and illegal uses, taxpayers have their remedy.

The following cases illustrate that the trend of the decisions is in the direction of allowing municipalities wider range than formerly in erecting public buildings to promote the general welfare and enjoyment: *Egan v. San Francisco,* 165 Cal. 576, 133 Pac. 294; *State ex rel. Manhattan C. Co. v. Barnes,* 22 Okla. 191, 97 Pac. 997; *Denver v. Hallett,* 34 Colo. 393, 83 Pac. 1066; *Camden v. Camden Village Corp.* 77 Me. 530, 1 Atl. 689; *Wilkerson v. Lexington,* 188 Ky. 381, 222 S. W. 74; *Greenbanks v. Boutwell,* 43 Vt. 207; *Worden v. New Bedford,* 131 Mass. 23; *Parker v. Concord,* 71 N. H. 468, 52 Atl. 1095; *Rome v. McWilliams,* 67 Ga. 106; *Jones v. Camden,* 44 S. C. 319, 23 S. E. 141; *Bates v. Bassett,* 60 Vt. 530, 15 Atl. 200.

In this state an action was brought by a taxpayer to restrain the city of Platteville from leasing a public hall for the purpose of holding theaters, concerts, lectures, shows, dances, and general entertainments. This court assumed that the city had the right to erect the building and to determine its plan and the mode in which it should be constructed, and it was said in the opinion:

"Human wisdom is not infallible, and it may be that the plan of this building was unwise; that it extended beyond the immediate, or even prospective, *municipal* wants of the city. Nevertheless it was the plan determined upon by the

only officials vested with the authority to determine the same. The lower part of the building seems to be adapted to the municipal purposes to which it is devoted. Whether, prior to such construction, the courts had power to confine the city authorities to some plan measured by or limited to the municipal necessities or wants of the city, is a question not here presented. It may be said, however, that courts of high authority have, in effect, held that such questions are largely within the discretion of the municipal authorities, and that courts should not interfere with such discretion except in a plain case of its abuse." *Bell v. Platteville,* 71 Wis. 139, 145, 36 N. W. 831.

It was held that the judgment of the circuit court dismissing the complaint should be affirmed. We find that this decision has often been cited as authority in other states. See, also, *Konrad v. Rogers,* 70 Wis. 492, 36 N. W. 261.

Counsel for defendant contends that the only mode by which a town could erect a building of the character in question is provided by sec. 43.51, Stats., the statute which provides for organizing community centers; that the delegation of the express power to community center organizations is a strong indication of legislative construction that the power to erect the building in question is not included under sub. (9), sec. 60.18.

This statute providing for the organization of community centers is quite recent and seems designed to provide for the erection of buildings in case the primary object is not a governmental one. The statute provides for a mode of government quite different from town government. A community center may be composed of distinct municipalities. The number of signatures to a petition for a referendum on the establishment of a community center is much larger than the number required by the general statute to a petition for a vote by the electors of a town on the question of building a town hall. We do not consider that the statute can be construed as depriving the defendant of the power to erect the building in question or that it is an indication of legislative

construction of the principal statute which has been discussed.

Counsel also cites sec. 43.49, which is relied on as showing the legislative construction of sec. 60.18. This and sec. 43.51 certainly indicate a legislative purpose to make provision for reasonable enjoyment and entertainment and recreation by communities at public expense, but we do not construe them as expressing any intention to limit the powers of towns conferred by sec. 60.18.

In *Wheelock v. Lowell,* 196 Mass. 220, 81 N. E. 977, a similar argument was made, and the court said (p. 224):

"The fact that in comparatively rare instances special statutory authority has been obtained does not argue against the existence of the general power, but is to be accounted for as done through excess of caution or as conferring some additional power not derived from the general law."

It is our conclusion that the trial court did not err in holding that the defendant had the power to borrow money for the erection of the building.

Defendant's counsel argues that the loan was made without authority of law for the reason that there was no compliance with the constitutional provision that any municipality incurring any indebtedness "shall, before or at the time of doing so, provide for the collection of a direct annual tax sufficient to pay the interest on such debt as it falls due, and also to pay and discharge the principal thereof within twenty years from the time of contracting the same." Sec. 3, art. XI, Const.

We shall not recite the proceedings attempting to authorize the loan, but it seems clear that no present annual tax was levied for the purpose of meeting the payments of principal and interest. There was no actual levy making it obligatory upon future officers to collect the necessary funds. Therefore we must hold that the loan was not made in conformity with the rule prescribed by the constitution. *Borner v. Prescott,* 150 Wis. 197, 136 N. W. 552, and cases cited.

The question is therefore presented whether the defense that the loan was not made in conformity with law should prevail. The court found that the loan was made in good faith, on the representation that the money was to be expended in building a town hall; that the old town hall was not adequate, and that the money was actually expended for public use and the uses of the town, and for a legitimate purpose for which the town could borrow and use money.

The subject of borrowing the money and erecting the town hall was voted upon on three occasions and was thoroughly discussed. For several years the electors waited until the money was expended and they had obtained the benefit of the loan which they had voted. It is conceded in the very able brief of counsel for defendant that "it is the established law of this state that where a municipality obtains money of a person on an illegal contract of some kind not prohibited by law nor *ultra vires*, and such other, acting in good faith, parts with such money, and the municipality uses the money for legal legitimate municipal purposes, to that extent the law will imply a promise to return the same, upon which an action for money had and received will lie."

It has been frequently held by this court that a municipal corporation may be held, on grounds of equity and common justice, to return that which it has obtained and holds by means of a contract which it had no authority to make. In such cases, where no moral turpitude is involved, where the municipality has the power to use the money or property for the purpose intended and has been benefited, the doctrine of *ultra vires* cannot be invoked to the injury of those who have acted in good faith relying on the transaction. *Grand Chute v. Herrick*, 163 Wis. 648, 158 N. W. 315; *Thomson v. Elton*, 109 Wis. 589, 85 N. W. 425; *Rice v. Ashland Co.* 114 Wis. 130, 89 N. W. 908; *McGillivray v. Joint School Dist.* 112 Wis. 354, 88 N. W. 310; *Paul v. Kenosha,* 22 Wis. 266; *Monaghan v. School Dist.* 38 Wis. 100; *First*

First Wisconsin Nat. Bank v. Catawba, 183 Wis. 220.    Dissent.

*Sav. & T. Co. v. Milwaukee Co.* 158 Wis. 207, 148 N. W. 22, 1093; *Frederick v. Douglas Co.* 96 Wis. 411, 71 N. W. 798.

In some of these cases the contracts had assumed to create liability beyond the constitutional limit and were quite as plainly illegal as in the case at bar. Nevertheless the municipalities were held liable on implied contract. Since we hold that the defendant had the power to make the loan with which to erect the building in question, and was enriched by its expenditure, we do not consider that the irregularity in the proceedings constitutes a defense.

There is argument in the briefs of counsel on the subject of ratification by the town of defects in the proceedings. In view of the conclusion we have reached it is unnecessary to consider this question.

*By the Court.*—Judgment affirmed.


The following opinion was filed March 31, 1924:


ESCHWEILER, J. (*dissenting*).   The jury found that the primary object in building this so-called town hall was not to subserve a public municipal purpose. The trial court and the majority here set aside such finding of fact, and with such disposition I cannot concur.

The legislature by sec. 43.51, Stats. (ch. 430, Laws 1919), specifically provided ways and means by which the residents of certain territory might lawfully provide for a community house as distinct from a town hall for the identical amusement and recreation purposes for which the building here involved is designed in such an overwhelming proportion.

This defendant at the time the building was started had a population of about 500 and an assessed valuation of about $610,000. Since then a village has been set off containing the building and with about 300 of the population, and it now possesses, at the town's expense, an opera house·

with stage, dressing rooms and checking room, a banquet hall with kitchen, a library room, and a council room.

In view of the nature of the building and it being so much more within the field of the community house than of the town hall, I think the verdict of the jury was amply sustained and should have been allowed to stand and require a judgment for the defendant.