Bell and another vs. The City of Platteville.

Bell and another, Appellants, vs. The City of Platteville, Respondent.

*February 7 — February 28, 1888.*

| 71 | 139 |
|----|-----|
| 71 | 158 |
| 71 | 505 |
| 71 | 139 |
| 83 | 226 |
| 71 | 139 |
| 93 | 293 |
| 71 | 139 |
| 111 | 1 38 |

Municipal Corporations. *(1) Power to rent city hall for entertainments. (2) Action to enjoin, by whom to be brought.*

1. Where the city authorities are by the charter given " the management and control of the finances and of all property of the city," and are charged with " the government of the city and the exercise of its corporate powers and management of its financial, prudential, and municipal concerns," they may lease a hall owned by the city to be used for concerts, theaters, and other entertainments for which it is adapted.
2. *It seems* that an action to restrain a city from exercising powers alleged to be in excess of its corporate authority cannot be maintained by citizens or tax-payers whose private rights are in no way jeopardized, and that such actions should always be in the name of the state and prosecuted by the public authorities.

APPEAL from the Circuit Court for *Grant* County.

The following statement of the case was prepared by Mr. Justice Cassoday:

This action was commenced April 20, 1885, by the plaintiffs, as tax-payers of the city, to restrain the defendant from

renting or allowing the city hall, then lately completed therein, and worth $25,000, to be used for the purposes of theaters, concerts, lectures, shows, dances, and general entertainments. The complaint contained suitable allegations, and among others that such renting and use would increase the danger of the building by fire and avoid the insurance thereon.

The answer alleged, among other things, in effect, that its city hall was built for and with money belonging to the city, and was occupied by it for its municipal uses; that the lower floor and basement thereof was occupied by its fire department, its clerk's office, and its common council meetings; that in the lower floor of said building, above the basement, there was a room built and suitable for use as a court-room in which to hold justice's court, and that it had leased and let the same to the town of Platteville (owning no part of said building), to use for the meetings of the board of supervisors of said town, and for the use of the town clerk of said town, and it proposes to permit the justices of the peace of said town to hold their courts therein, they paying a reasonable compensation therefor; that the whole of the upper floor of said building, being 98 feet long, 48 feet wide, and 28 feet high, with a gallery at one end and a platform suitable for lecture purposes and theatrical representations at the other, had been built and fitted up expressly for a hall or large room in which to hold public meetings and gatherings of the people; that prior to such building there was no hall-room or other place reasonably suitable and safe for such meetings and gatherings in said city; that such room was voted by the people and voters of said city as an absolute necessity for the safety and comfort and well-being of the people therein for amusement and culture, and that the plaintiff, as contractor or agent, took part in the building of said hall; that the defendant has paid nearly the whole cost of the building; that said large

room or hall is wholly useless to the defendant for any other purpose than for a place in which to hold public meetings, concerts, lectures, and other entertainments; that for such purposes it will bring a rental to the defendant of at least $500 a year; that the defendant proposed, unless restrained, to continue such use of the hall under proper regulations, and for reasonable rent; that the plaintiffs had not suffered, nor were liable to suffer, any money damage or injury by reason of anything done or threatened by the city. The answer denied that any of the things mentioned would avoid any insurance on the building.

At the close of the trial the court found in effect that the plaintiffs were such tax-payers; that the building was insured in two companies, in the aggregate for $16,000; that the scenery added to the fixtures of such large room known as "Opera Hall" had increased the rate of insurance one per cent. for the period of three years; that said policies were still in full force and in no way affected as to validity by the addition of such scenery; "that the material facts set forth in the answer for the purposes of this case must be taken as true." As a conclusion of law the court found that the complaint should be dismissed, with costs. From the judgment entered thereon, in accordance with such findings and conclusion, the plaintiffs appeal.

For the appellants there was a brief by *Bushnell & Watkins*, attorneys, and a separate brief by *A. R. Bushnell*, of counsel, and the cause was argued orally by *A. W. Bell*, in person, and by *Mr. Bushnell*. They contended, *inter alia*, that the use of the hall in the manner contemplated by the city should be restrained, because it is unlawful and improper and would result in wear and tear as well as increase the risk of the destruction of the building by fire and the cost of its insurance. *School District v. Arnold*, 21 Wis. 57; *Scofield v. Eighth School Dist.* 27 Conn. 499; *Weir v. Day*, 35 Ohio St. 143; *Spencer v. Joint School Dist.* 15 Kan. 259;

*Dorton v. Hearn,* 67 Mo. 301; *Cooper v. Alden,* Harr. (Mich.), 72; *Perry v. McEwen,* 22 Ind. 440; *Niebuhr v. Piersdorff,* 24 Wis. 317; *Pope v. Halifax,* 12 Cush. 411. As to the right of property holders to resort to equity to restrain municipal corporations and their officers from transcending their lawful powers or violating their legal duties in any ,mode which injuriously affects the tax-payers, they cited 2 Dillon on Mun. Corp. (3d ed.), secs. 914, 916, 917, 919, 922; *Crampton v.`Zabriskie,* 101 U. S. 601; *Judd v. Fox Lake,* 28 Wis. 583; *State ex rel. Manitowoc v. County Clerk,* 59 id. 17; *Nevil v. Clifford,* 55 id. 171; *Peck v. School District,* .21 id. 516; *Helms v. McFadden,* 18 id. 191; *McLachlan v. Staples,* 13 id. 448.

For the respondent there was a brief by *Carter & Cleary,* and oral argument by *Mr. W. E. Carter.*

CASSODAY, J.  It is undoubtedly true that the corporate authorities of a city possess only such powers as are expressly granted by legislative enactment, and such others as are necessarily or fairly implied in or incident to the powers thus expressly granted, or essential to the declared objects and purposes of the corporation. 1 Dill. Mun. Corp. (3d ed.), sec. 89; *Appeal of Whelen,* 108 Pa. St. 197; *Le Couteulx v. Buffalo,* 33 N. Y. 333; *Meinzer v. Racine,* 68 Wis. 245, 246; *Gilman v. Milwaukee,* 61 Wis. 592.

By the charter there was conferred upon the city of *Platteville* the general powers possessed by municipal corporations at common law, and in addition thereto such as are therein "specifically granted." Sec. 1, subch. 1, ch. 83, Laws of 1880. The government of the city and the exercise of its corporate powers and management of its financial, prudential, and municipal concerns, were vested in a mayor and six aldermen, who were denominated the common council, and such other officers as are therein provided for. Sec. 3, Id. To the common council was given "the management

and control of the finances and of all property of the city," and "in addition to all other powers" vested in the common council, numerous specific powers were granted to it by the several subdivisions of sec. 17, subch. 4 of the charter, among which are the following: "38. To receive, purchase, and hold for the use of the city any estate, real or personal, to sell and convey the same, and to insure any property of the city against loss or damage by fire, lightning, wind, or hail. . . . 40. To establish a fire department; . . . to provide protection from fire by the purchase of fire-engines and all the necessary apparatus for the extinguishment of fires; . . . to erect engine-houses," etc. These subsections were amended by ch. 94, Laws of 1881, particularly by adding to subsection 38 the following: "*Provided*, no purchase of any said real estate shall be made to exceed one thousand dollars in value during any current year, unless the question of such purchase shall have been submitted to the electors of said city at a general or special election, upon due notice, and a majority thereof shall vote in favor of such purchase. Notice of the submission of such question shall be given at least ten days prior to such election by posting or publication thereof as in other cases." The statutes provided that any city may borrow money and issue its negotiable bonds for the purchase or erection of public buildings; but such bonds are not to issue until such proposition to issue shall have been submitted to the people of such municipality and adopted by the majority voting thereon. Secs. 942, 943, R. S.

It is said there is no proof of any meeting ever being called to vote upon the question of the building of a theater. It may be added that the record fails to disclose whether any proposition for the purchase of the land, or the construction of the city hall, or the issuing of any bonds therefor, was ever submitted to the people or voted upon. The answer to all such suggestions, however, is that this

action is not brought to restrain the purchase of the lots, nor the construction of the building. Its only purpose is to restrain the alleged misuse of certain portions of the building, and hence presupposes its construction and substantial completion. The complaint alleges, in effect, that the city owned the hall; that it was of the value mentioned; that it had been "built by taxes legally voted by the citizens of said city." We must therefore assume, even in the absence of proof, that the city authorities were duly authorized to purchase the lots, construct and complete the building as they did, and put the same in the condition in which it existed at the time the action was commenced. The character of the building, and the several rooms and apartments thereof, and their respective uses, are set out in detail in the verified answer. The trial court, for the purposes of the case, and in the absence of evidence to the contrary, assumed such statements to be true. If they were not true and prejudicial to the plaintiffs, they should have made it so appear, since the burden was upon them to show affirmatively their right to equitable interference. In the absence of such proofs, the plaintiffs occupied the same position in those respects as though they had demurred to the answer.

We start, then, with the city as the lawful owner of the building containing the rooms and apartments mentioned. From what has been said, it will appear, that the question so fully argued by the learned counsel for the plaintiffs as to whether the municipality had any legal authority to build a coliseum, a theater, a circus, a beer-garden, or any structure for mere amusement, recreation, or culture, is not involved in the case nor pertinent to any of the issues raised. So far as this case is concerned, it must be assumed that the city had authority to build a city hall, and built it. Such authority having been given without restriction, included, by necessary implication, the right to determine the

plan of the building and the mode in which it should be constructed. *Konrad v. Rogers*, 70 Wis. 492; *Ely v. Rochester*, 26 Barb. 133; 1 Dill. Mun. Corp. sec. 140; *Poillon v. Brooklyn*, 101 N. Y. 132. Human wisdom is not infallible, and it may be that the plan of this building was unwise; that it extended beyond the immediate, or even prospective, *municipal* wants of the city. Nevertheless it was the plan determined upon by the only officials vested with the authority to determine the same. The lower part of the building seems to be adapted to the municipal purposes to which it is devoted. Whether, prior to such construction, the courts had power to confine the city authorities to some plan measured by or limited to the municipal necessities or wants of the city, is a question not here presented. It may be said, however, that courts of high authority have, in effect, held that such questions are largely within the discretion of the municipal authorities, and that courts should not interfere with such discretion except in a plain case of its abuse. *Greeley v. People*, 60 Ill. 20; *Torrent v. Muskegon*, 47 Mich. 115. In this last case such intervention was asked upon the ground that the proposed building was more expensive than needed by the fire department, and that there was no authority for building a city hall. In the language of Lord Chancellor SELBORNE, "this doctrine [of ultra vires] ought to be reasonably and not unreasonably understood and applied, and that whatever may fairly be regarded as incidental to, or consequential upon, those things which the legislature has authorized, ought not, unless expressly prohibited, to be held by judicial construction to be *ultra vires*." *Att'y Gen. v. Great Eastern R. Co.* L. R. 5 App. Cas. 473, 33 Eng. (Moak.) 773. As indicated, the city is the lawful owner of the building with the opera hall in it. This being so, there are really but two questions presented for determination.

1. Have the city authorities the lawful right to let or use

the opera hall for the purposes mentioned? As observed, the charter expressly gives them "the management and control of the finances *and of all property of the city.*" They are, moreover, charged with "the government of the city and the exercise of its corporate powers and management of its financial, prudential, and municipal concerns." With the city owning the lots and building, and the city authorities possessing the powers thus expressly granted, it seems to us they have, by necessary implication, and as incident to such ownership, the lawful right to let or use the opera hall for the purposes mentioned. In fact this seems to be the logical result of former decisions of this court. Thus, while it was held in *Att'y Gen. v. Eau Claire*, 37 Wis. 400, that the legislature could not authorize the erection of a dam across the river at the expense of the city, "for the purpose of leasing the water-power for private purposes" *merely*, yet, upon the subsequent amendment of the act, it was in effect held that as the city had lawful authority to erect the dam "for the purpose of water-works for the city," it might, as incident to such authority, lease for private purposes any excess of water power not required for its water-works. *S. C.* 40 Wis. 533. This doctrine was re-affirmed in the recent case of *Green Bay & M. Canal Co. v. Kaukauna W.-P. Co.* 70 Wis. 635. The decisions in other states in cases similar to this confirm the same rule. Thus, in *Spaulding v. Lowell*, 23 Pick. 71, "a town built a market-house two stories high, and appropriated the lower story for a market, which was *bona fide* their principal and leading object in erecting the building," and "it was held that the appropriation of the upper story to other subordinate purposes was not such an excess of authority as to render the erection of the building and the raising of money therefor illegal." In *French v. Quincy*, 3 Allen, 9, it was in effect held that in the erection of a town-house the municipality might "make suitable provision for its prospective

wants; and if the building contains rooms not wanted for the time being for municipal business, the town may let them temporarily, or allow them to be used gratuitously." To the same effect, *Camden v. Village Corp.* 77 Me. 530; *S. C.* 33 Alb. L. J. 28; *Worden v. New Bedford,* 131 Mass. 23; *The Maggie P.,* 25 Fed. Rep. 202. The cases relating to powers of school districts and towns cannot be regarded as authority for limiting the powers of cities as claimed, since their powers are very much more restricted, being, at most, *quasi* corporations, or corporations *sub modo* only. *Cathcart v. Comstock,* 56 Wis. 606–608. We must hold that the letting and use mentioned was not unauthorized.

2. There seems to be another insuperable objection to the maintenance of this action by the plaintiffs as mere taxpayers. The case is wholly barren of any action of the municipality tending to cloud the title of any of their property or in any way to increase the burden of taxation upon any property within the municipality. These things being so, the private rights of the plaintiffs are in no way jeopardized. *Gilkey v. Merrill,* 67 Wis. 459. On the contrary, their taxes will apparently be diminished by the revenue derived from the proposed letting or use. The plaintiffs appear in the case, therefore, as mere citizens of the municipality, asking the court to restrain the city officials from exercising powers said to be in excess of their corporate authority. That, however, seems to be a matter wholly between the municipality and the state. 2 Dill. Mun. Corp. sec. 574, and cases there cited; *Camden & A. R. Co. v. M. L. & E. H. C. R. Co.* 48 N. J. Law, 530. Undoubtedly the courts have a supervisory power over municipal corporations as well as others in such cases. Our statute provides that "in an action for that purpose commenced by the *attorney general* in the name of the state, in any circuit court, against a corporation, such court may restrain such corporation by injunction from assuming or exercising

any franchise, liberty, or privilege, or transacting any business, *not authorized by its charter.*" Sec. 3236, R. S. It seems very proper that an action of such public concern should always be in the name of the state, and prosecuted by the public authorities.

*By the Court.*— The judgment of the circuit court is affirmed.