BECHTHOLD and another, Appellants, vs. CITY OF WAUWA-
TOSA and others, Respondents.

*January 12—February 15, 1938.*
*May 20—September 13, 1938.*

For the appellants there was a brief by *Bitker, Tierney &
Puchner,* attorneys, and *Charles B. Perry* of counsel, all of
Milwaukee, and oral argument by *Mr. Joseph E. Tierney*
and *Mr. Perry.*

*Roy R. Stauff* of Milwaukee, for the respondents city of
Wauwatosa and Fred Prudisch.

For the respondent Federal Paving Corporation there
was a brief by *Bender, Trump & McIntyre* of Milwaukee,
and oral argument by *E. L. McIntyre.*

The following opinion was filed February 15, 1938:

NELSON, J.  In order that the several contentions of the
plaintiffs may be understood, it will be necessary to state the
facts fully.  There is no material dispute as to what they
are.  The city of Wauwatosa is a city of the third class.  Its
common council is composed of ten members.  It has a
board of public works, consisting of five members, and duly
organized pursuant to sec. 62.14 (1), Stats.  West North
avenue is one of its principal streets.  Prior to the proceed-
ings hereinafter recited, West North avenue had been per-
manently improved with concrete, but that pavement was in
a bad, worn-out condition.  On December 15, 1936, its com-
mon council passed a resolution directing that the proper
city officials request a PWA grant for repairing and resur-
facing West North avenue from North Sixtieth street to
Wauwatosa avenue, and also another street.  Thereafter
some correspondence was had between the city engineer and
the PWA administrator.  No grant of PWA funds having
been made to the city in compliance with its request, the

board of public works on May 14, 1937, passed a resolution recommending that the common council direct the board of public works to view the premises and make assessments of benefits and damages for the repair and resurfacing of West North avenue from Sixtieth street to Wauwatosa avenue. On May 18th, pursuant to such recommendation, the common council unanimously passed a resolution directing the board of public works to view the premises and to make an assessment of benefits and damages for the repair and resurfacing of said street. On June 3d, the board of public works filed its preliminary report on the assessment of benefits and damages. On June 15th the council resolved "that the report of said board of public works of the assessment of benefits for the proposed resurfacing to be constructed in that portion of West North avenue from North Sixtieth street to Wauwatosa avenue be and the same is hereby adopted; that all proceedings of the board of public works relating to making such assessments are hereby ratified and confirmed and . . . that the portion of cost of such improvement which shall be paid for by the city at large shall be the expense of improving street crossing intersections." On June 15th the common council, by a unanimous vote, also passed a resolution directing the board of public works to advertise for bids as follows:

"Be it resolved by the common council of the city of Wauwatosa, Wisconsin, that the board of public works be and they are hereby directed to advertise for bids for surfacing West North avenue from North Sixtieth street to Wauwatosa avenue with a 3-inch bituminous pavement."

On June 17th the chairman of the board of public works directed the city engineer to prepare specifications for the resurfacing of said avenue. On June 24th the advertisement for bids was first published in the Wauwatosa News. On June 26th the specifications were completed by the city engineer, who, according to his testimony, left them with

the city clerk. According to the testimony of the city clerk, the specifications were filed in his office on June 28th. The specifications, however, were on the same day withdrawn by the city engineer, and no copy thereafter remained in the clerk's office up to the time that bids were opened. On July 1st the advertisement for bids was published a second time in the Wauwatosa News. The bids submitted were opened on that same evening. The advertisement for bids announced that the bids would be opened on the 1st day of July, 1937, at the office of the city clerk at 7:30 p. m. The specifications provided for alternate materials which, so far as here material, were as follows:

"The material for this work shall meet the following requirements:

"Binder Material.

"(1) Class 'H' course [coarse] size open graded Bituminous Concrete approved by the United States Department of Agriculture, Bureau of Public Roads, Washington, D. C.

"Or

"(2) Cold Asphalt Pavement (Class 'H' Liquefier Type) Section 403, Wisconsin State Highway Commission Specifications 1935 edition.

"Surface Course.

"Class 'J' or higher type Sheet Asphalt approved by the United States Department of Agriculture, Bureau of Public Roads, Washington, D. C., or equal."

The bid of the defendant, Federal Paving Corporation, was $27,310.40. Jacobus & Winding Construction Company bid $27,835. Payne & Dolan, Inc., bid $28,098.20. Two other contractors submitted bids pursuant to the advertisement for alternate proposals on hot sheet asphalt, for which there were specifications. These bids were considerably higher than the bids mentioned above. On July 6th the board of public works met and was told by the defendant Federal Paving Corporation that it proposed to furnish

"Colprovia" under its bid. "Colprovia" was approved as a bituminous pavement by the United States Bureau of Public Roads. It was a patented sheet asphalt pavement. "Colprovia" specifications were on file in the office of the city engineer. The board recommended that the contract be let to Federal Paving Corporation. On the same day the common council passed a resolution authorizing the letting of the contract to Federal Paving Corporation. On July 16th the contract to which the "Colprovia" specifications had been attached was signed by the city. The work started on August 5th. On that day the plaintiff Bechthold told Schwerm, an officer of Federal Paving Corporation, that an action was going to be started on the job. The action was not started until August 19th. Work on the job was thereafter discontinued until after the judgment dismissing the plaintiffs' complaint was entered by the circuit court. The work was thereafter fully completed.

An examination of the relevant statutes, pursuant to which the city purported to act, reveals that the city did not strictly comply with several provisions thereof. It is contended by the plaintiffs that the proceedings for that reason were invalid and void.

Before taking up the several contentions of the plaintiffs, the nature of the action should be considered. It is a taxpayers' action brought on behalf of the plaintiffs and all other taxpayers similarly situated. Taxpayers' actions are entertained on the theory that, unless the threatened action of the municipality complained of is restrained, the taxpayer and his class will sustain some pecuniary loss. It has been held that a taxpayer cannot sue to enjoin an illegal or unauthorized act on the part of a municipality unless such act will, if unrestrained, result in injury or loss to him. *Bell v. Platteville,* 71 Wis. 139, 36 N. W. 831; *Kasik v. Janssen,* 158 Wis. 606, 149 N. W. 398; *Milwaukee Horse & Cow*

*Comm. Co. v. Hill,* 207 Wis. 420, 241 N. W. 364; *Stuart v. Gilbert,* 215 Wis. 546, 255 N. W. 142.

In *Berger v. Superior,* 166 Wis. 477, 166 N. W. 36, a taxpayers' action, it was said (p. 479):

"As general taxpayers they may maintain a suit in equity to restrain the performance of the contract if it is made to appear that it is invalid and that loss will ensue to the general taxpayers through its performance."

It is clear that a taxpayers' action may be maintained to restrain the performance of a contract when it appears that the contract is invalid and that loss will ensue to the taxpayers if the municipality performs under it. It appears that the plaintiffs are taxpayers, and that under the contract the city at large will have to pay for that part of the resurfacing which lies within the street intersections. That fact is sufficient to meet the requirements of the law that a taxpayer must prove that a loss to him will ensue if the contract is permitted to be performed, although the additional taxes which the plaintiffs, with other taxpayers, will be compelled to pay is small in amount. *Chippewa Bridge Co. v. Durand,* 122 Wis. 85, 99 N. W. 603; *Wagner v. Milwaukee,* 196 Wis. 328, 220 N. W. 207. In order to prevail, the plaintiffs must further prove that the contract, performance of which is sought to be restrained, is invalid. While the trial court grounded its decision on its conclusions, (1) that the city of Wauwatosa, in entering into the contract, substantially complied with all statutory requirements in the proceedings leading up to the letting of the contract, and (2) that the plaintiffs as taxpayers were guilty of laches and estopped to maintain the action, we shall ground our decision upon the conclusion that the statutes were substantially complied with in the letting of the contract rather than on the laches of the plaintiffs as taxpayers. Had the plaintiffs brought this action on their own behalf, the application of the doctrine of

laches to them would have been well warranted, *State ex rel. Schintgen v. Mayor and Common Council of La Crosse,* 101 Wis. 208, 77 N. W. 167; *Beaser v. Barber A. P. Co.* 120 Wis. 599, 98 N. W. 525; *Lawton v. Racine,* 137 Wis. 593, 119 N. W. 331; *State ex rel. Taylor v. Superior,* 108 Wis. 16, 83 N. W. 1100; *Frederick v. Douglas County,* 96 Wis. 411, 71 N. W. 798, but the action was brought on behalf of other taxpayers, some of whom may have known of the improvement and others may not, *Cawker v. Milwaukee,* 133 Wis. 35, 113 N. W. 417.

Before considering the several contentions of the plaintiffs, it may be well to note that the proceedings leading up to the letting of the contract were in purported pursuance of secs. 62.15 and 62.16, Stats. A perusal of those statutes reveal that there are certain provisions which are positive prohibitions, as, for instance:

Sec. 62.15 (3) : "No bid shall be received unless accompanied by a contract and bond with sureties, as prescribed by the form furnished," etc.

Sec. 62.15 (12) : "No contract shall be executed on the part of the city until the comptroller shall have countersigned the same and made an indorsement thereon showing that sufficient funds are in the treasury to meet the expense thereof, or that provision has been made to pay the liability that will accrue thereunder." And

Sec. 62.16 (2) (b) : "No street shall be worked until the grade thereof is established and recorded in the manner herein set forth."

It is clear that, where the legislature has expressly prohibited action unless certain other acts are performed, such acts are deemed essential and must be performed. But with respect to other provisions, which are not so vitally essential, a substantial compliance therewith by the council or board of public works is deemed sufficient. Invalidity of a contract ordinarily results from a failure to comply with provisions

which relate to essential matters. *Dean v. Charlton,* 23 Wis. 590. The doctrine of "substantial compliance" with statutory provisions has been recognized in a number of cases. *Chippewa Bridge Co. v. Durand, supra; Bekkedal v. Viroqua,* 183 Wis. 176, 196 N. W. 879, 197 N. W. 707. So the question to be determined in considering the plaintiffs' contentions is whether certain provisions of the statutes, which the council failed strictly to follow, were so essential to the proceedings that a failure to comply with them results in invalidity. If the provisions were not strictly essential, then a substantial compliance therewith was sufficient.

The plaintiffs make numerous contentions, some of which are so technical as to require no consideration. We shall discuss only those contentions which the plaintiffs have argued.

The plaintiffs first contend that the statute relating to plans and specifications for public works was not followed. Sec. 62.15 (2), Stats., provides that "when the work is required . . . to be let to the lowest responsible bidder, the board of public works shall prepare plans and specifications for the same, containing a description of the work, the materials to be used and such other matters as will give an intelligent idea of the work required and file the same with the city clerk for the inspection of bidders. . . ."

Sec. 62.15 (3), Stats., in part, provides:

"After the plans, specifications and form of contract shall have been prepared the board of public works shall advertise for proposals for doing such work by publishing a notice in the official newspaper for such length of time as it may think the interest of the city demands, not less than once a week for two successive weeks."

It is undisputed that the specifications were not fully prepared and filed with the city clerk on June 24, 1937, when

the first advertisement was published. The specifications, according to the testimony, were completed on June 26, 1937, and left with the clerk for a short time either on that day or within a day or two thereafter. The specifications left with the city clerk were shortly thereafter withdrawn by the city engineer for the use of some one of the prospective bidders. The office of the city engineer was located about forty feet from the office of the clerk. All of the bidders apparently knew that the specifications were to be obtained from the city engineer, and such specifications were promptly and without delay so obtained by every contractor who desired to bid on the work. The plaintiffs do not suggest that any contractor was denied a copy of the specifications, or that any contractor proposing to bid on the job was in the slightest manner delayed or inconvenienced. The record in fact reveals that no request for specifications was made of the city clerk. Under the circumstances, it is our opinion that the statute was substantially complied with, and the failures complained of did not invalidate the proceedings. Had some contractor, on some pretext or other, been denied specifications, or had some contractor, desiring to bid on the work, been so inconvenienced as to render his bidding on the work impracticable, a different conclusion might have been reached.

The plaintiffs next contend that, since the advertisement for bids was not published for two full weeks prior to the opening of bids, the proceedings were invalid. The statute provides that the board of public works shall advertise for proposals for doing such work by publishing a notice in the official newspaper for such length of time as it may think the interest of the city demands, not less than once a week for two successive weeks. It appears without dispute that the first notice was published on June 24, 1937; that the second notice was published on July 1st. Strictly speaking, the no-

tice was published once during the week of June 24th to June 30th, and once during the week thereafter. This, however, in our opinion, did not amount to a compliance with the intent of the statute. We think it reasonably clear that the legislature intended that a full two weeks' publication of such a notice be made prior to the opening of the bids. But it does not follow that such a failure invalidated the proceedings. In *Newton v. Superior,* 146 Wis. 308, 130 N. W. 242, 131 N. W. 986, a publication by the city clerk, once instead of once a week for two successive weeks, was held not to invalidate the proceedings for the determination of a special assessment. A similar conclusion was reached in *Jenkins v. City of Bowling Green,* 251 Ky. 119, 64 S. W. (2d) 457. There is no suggestion that any contractor desiring to bid on the work was even slightly inconvenienced by lack of time. In fact, all of the testimony is to the effect that each contractor-bidder had abundant time in which to prepare his bid and to file it with the city clerk. There is no suggestion that any contractor other than the five who bid was interested in bidding on the work. No contractor had any advantage over the others. The corporations in which the respective plaintiffs are interested made no complaint before the bid of Federal Paving Corporation was accepted that they were in any way inconvenienced by the shortness of the time permitted to them to bid. In our opinion, the action of the board of public works in advertising for proposals for less than two full weeks before opening the bids must be considered, under all of the circumstances of this equitable action, as amounting to a substantial compliance with the statute. If there had been a showing that other contractors desiring to bid on the work had been denied such right because of the shortness of the time, another conclusion might properly have been reached, since in such a situation the city would not have had the benefit of bids from all contractors desiring to bid on the work.

The plaintiffs next contend that the specifications were inadequate and insufficient. The statute provides that "when the work is required . . . to be let to the lowest responsible bidder, the board of public works shall prepare plans and specifications for the same, containing a description of the work, the materials to be used and such other matters as will give an intelligent idea of the work required. . . ." Prior to the opening of the bids and the letting of the contract no contractor complained or suggested that the specifications were inadequate or insufficient. The work involved was the resurfacing of a number of blocks of old, worn-out concrete with a three-inch bituminous pavement, and the specifications permitted alternate bids: For binder material, class "H" coarse-size open-graded bituminous concrete, approved by the United States Department of Agriculture, Bureau of Public Roads, Washington, D. C., or cold asphalt pavement (class "H," liquefier type), section 403, Wisconsin State Highway Commission specifications, and for surface course, class "J" or higher type sheet asphalt approved by the United States Department of Agriculture, Bureau of Public Roads, Washington, D. C., or equal. The specifications also contained other specifications for hot asphalt. When the bids were opened Federal Paving Corporation was found to be the lowest bidder. When called upon to state the material which it proposed to furnish, if awarded the contract, it stated that it would furnish "Colprovia," a bituminous pavement, approved by the bureau of public roads as complying with class "H," as a binder material, and class "J" as a surface material. The specifications put out by the owners of "Colprovia" were definite and certain and were on file with the city engineer. The board of public works accepted the bid, and the council authorized the contract under which Federal Paving Corporation agreed to resurface the road with "Colprovia" in compliance with the specifications relating thereto, attached to the contract. In

our opinion, the specifications were adequate and sufficient, and the action of the board of public works and the council in awarding the contract to Federal Paving Corporation complied with so much of sec. 62.15 (8), Stats., as provides:

"Provided, that before any contract is let all the bids received shall be opened, and considered *before the kind of article or process to be used* in such work shall be decided upon by the proper city authorities, and thereupon the proper city authorities shall first determine which kind of article, material or process shall be used in the work, and the contract shall be let to the lowest responsible bidder for the kind of article, material or process so selected for use in the proposed public work."

The plaintiffs next contend that, since "Colprovia" is a patented material or process, and since the city had not obtained from the owner of such material or process, before advertising for bids for such work, an agreement to furnish to any contractor desiring to bid upon such work as a whole the right to use the patented article, materials, and processes in the construction of said work, and also to furnish to any contractor the patented article itself upon the payment of what the authorities of said city charged with the duty of letting the contract for such public work shall deem to be a reasonable price therefor, which price shall be publicly stated and furnished upon application to any contractor desiring to bid on said work, the contract entered into was invalid and void, under the law of such cases as *Dean v. Charlton, supra; Allen v. Milwaukee,* 128 Wis. 678, 106 N. W. 1099; *Cawker v. Milwaukee,* 133 Wis. 35, 113 N. W. 417; *Neacy v. Milwaukee,* 171 Wis. 311, 176 N. W. 871.

It is clear that sub. (7), enacted in 1909, enacted into statutory law that which had been theretofore held in actions involving plans and specifications in which patented

articles, materials, or processes were exclusively specified. However, the legislature at the same time enacted sub. (8), which is as follows:

"Different plans and specifications for any public work may be prepared by the proper authorities requiring the use of different kinds of materials, whether patented or not, thereby bringing one kind of article, material or process in competition with one or more other kinds of articles, materials or processes designed to accomplish the same general purpose, and bids received for each such kind of article, material or process, and thereafter a contract let for one kind of article, material or process; provided, that before any contract is let all the bids received shall be opened, and considered before the kind of article or process to be used in such work shall be decided upon by the proper city authorities, and thereupon the proper city authorities shall first determine which kind of article, material or process shall be used in the work, and the contract shall be let to the lowest responsible bidder for the kind of article, material or process so selected for use in the proposed public work."

This subsection has not heretofore been construed, but it seems clear that its purpose is to permit the preparation of plans and specifications under which different kinds of materials, patented or unpatented, may enter into competition with each other, and to permit the proper authorities to enter into a contract for either of the materials bid on, whether patented or not, which, in the opinion of such body, complies with the specifications. According to the testimony, there are numerous so-called bituminous pavements differing in some respects, but all approved by the federal bureau of public roads. In our opinion, it was not the purpose of sub. (8) to require all bidders to bid on all of the possible materials or processes which might come within the specified class. The statute, in our view, recognizes the very situation which arose in this action where there was keen compe-

tition between contractors who bid on both patented and unpatented pavements. So we conclude that the contention of the plaintiffs that there was a failure to comply with sub. (7) is not sound.

The plaintiffs also contend that since Federal Paving Corporation did not specify that it would furnish "Colprovia" in performing its contract, until after the bids were received, that this amounted to the making of its own specifications for the work which was condemned in *Ricketson v. Milwaukee,* 105 Wis. 591, 81 N. W. 864. In that case the city of Milwaukee advertised for bids for the construction of a garbage crematory. The city had prepared no specifications showing a description of the building to be built, the machinery, furnaces, and appurtenances to be installed. Each bidder was permitted to submit his own plans and specifications not only for the building but also for the machinery, furnaces, and appurtenances. It was, of course, held that such proceedings were invalid in that there was nothing upon which bidders could bid with anything like equality. That is not the situation here. No contractor had any difficulty with the specifications on which he bid, and no contractor apparently failed to get an intelligent idea of the work proposed to be done and required by him to be performed in case he was awarded the contract.

So we reach the conclusion that, although the city in the respects hereinbefore considered failed to follow the statute with respect to having the specifications fully prepared prior to the date of advertising for bidders, and failed to publish the advertisement for two successive full weeks before the bids were opened, the city nevertheless substantially complied with the law; and that, as to the specifications put out for bids and the reception of alternate bids on the different pavements and the entering into the contract with Federal Paving Corporation after it stated it would furnish "Colprovia" under its bid, fully complied with the law.

It may be noted in concluding this opinion that no bad faith, no collusion, no corruption, no fraud, is asserted by the plaintiffs against any officer of the city. There is no suggestion that the Federal Paving Corporation has in any way failed to perform its contract in a manner entirely satisfactory to the board of public works and to the common council. It is to be regretted that the city did not strictly comply with the several statutes. As a result of its failure strictly to follow the statutes which might with little difficulty have been done, the Federal Paving Corporation, which apparently acted in entire good faith, has been called upon to bear the expense of extended litigation. It is to be hoped that city councils in the future will exercise more care in seeing that proceedings conducted by them are in accordance with the statutes.

*By the Court.*—Judgment affirmed.

The following memorandum was filed April 12, 1938:

PER CURIAM. In this case plaintiffs' motion for a rehearing is granted and arguments will be heard at the May assignment upon the following questions:

(1) Did the failure to comply with sec. 62.15 (3), Stats., by publishing notice advertising for proposals for doing the work "not less than once a week for two successive weeks" render the awarding of the contract thereunder wholly void so as to entitle the plaintiffs to judgment enjoining payment by the city of Wauwatosa of any sums of money under the contract?

(2) Did laches in this taxpayers' action defeat the plaintiffs' right to relief as prayed?

*On rehearing:*

For the appellants there were briefs by *Bitker, Tierney & Puchner,* attorneys, and *Charles B. Perry* of counsel, all of

Milwaukee, and oral argument by *Mr. Joseph E. Tierney* and *Mr. Perry.*

*Roy R. Stauff* of Milwaukee, for the respondents city of Wauwatosa and Fred Prudisch.

For the respondent Federal Paving Corporation there were briefs by *Bender, Trump & McIntyre* of Milwaukee, attorneys, and *E. L. McIntyre* of Milwaukee and *Roberts, Roe & Boardman* of Madison of counsel, and oral argument by *Mr. McIntyre* and *Mr. W. Wade Boardman.*

A brief was also filed by *Lyel N. Jenkins,* city attorney of Stevens Point, as *amicus curiæ.*

The following opinion was filed June 21, 1938:

PER CURIAM (*on rehearing*). A motion for rehearing was granted in this case and the matter has been reargued and reconsidered. Upon such reconsideration the court is of the view that·it was in error in affirming the judgment of the circuit court. In its opinion the court said:

"In our opinion, the action of the board of public works in advertising for proposals for less than two full weeks before opening the bids must be considered, under all of the circumstances of this equitable action, as amounting to a substantial compliance with the statute."

This is not a correct statement of the law and is withdrawn. It should have been stated that there was sufficient compliance with the law so that no substantial injury was done to the taxpayers of the municipality, and therefore they were not entitled upon equitable considerations to enjoin the payment of the contract price. Upon reconsideration the court is, however, of the opinion that as restated it is erroneous for the following reasons:

The applicable sections of the statutes are set out in the original opinion. In addition to those set out in the original opinion, sec. 62.15 (1) provides:

"All public work, the estimated cost of which shall exceed five hundred dollars, shall be let by contract to the lowest

responsible bidder; all other public work shall be let as'the council may. direct. . . ."

The substance of sec. 62.15 has been embodied in our statutes for a great many years and has been before this court for consideration in numerous cases. The first question to be determined in the disposition of this matter is whether the contract when executed and delivered was void. Upon this question this court has in various actions spoken in plain and unambiguous terms. In *Dean v. Charlton* (1869), 23 Wis. 590, an attempt was made to sustain a contract for a patented article on the ground that advertising for bids would be a futile thing as there could be but one bidder.

It was argued therefore that the city of Madison did not need to advertise for bids. The court said (p. 604):

"The power to contract for the lighting of the streets of the city was assumed, in that case [*The Harlem Gas Co. v. The Mayor, etc.* 33 N. Y. 309] to be one of the general powers of a municipal corporation. . . . But here the question is quite different. It is not necessary to inquire whether the city of Madison, by virtue of its existence as a municipal corporation, would have had the power to contract for paving its streets with the Nicholson pavement, at the expense of the city, after discovering that the provisions of the charter enabling it to cause its streets to be paved at the expense of the lots were inapplicable for that purpose. . . . It seeks here to charge the expense upon the lots, and this it has no general power to do by virtue of its mere existence as a municipal corporation; but, if done at all, it can only be done under the statutory authority in its charter, and by complying substantially, if not strictly, with all its requirements."

In *Neacy v. Milwaukee* (1920), 171 Wis. 311, 321, 176 N. W. 871, there was a failure to comply with the charter provisions of the city of Milwaukee with respect to letting a contract to the lowest bidder. The court said, citing cases:

"It is well settled that contracts binding a municipality can be culminated only in the manner prescribed by the char-

ter, and municipal officers must follow the prescribed procedure step by step."

See the following cases: *Ricketson v. Milwaukee* (1900), 105 Wis. 591, 81 N. W. 864; *Chippewa Bridge Co. v. Durand* (1904), 122 Wis. 85, 99 N. W. 603; *Cawker v. Milwaukee* (1907), 133 Wis. 35, 38, 113 N. W. 417; *White Construction Co. v. Beloit* (1922), 178 Wis. 335, 338, 190 N. W. 195; *Wagner v. Milwaukee* (1928), 196 Wis. 328, 220 N. W. 207; *Coyle v. Richter* (1931), 203 Wis. 590, 234 N. W. 906; *Journal Printing Co. v. Racine* (1933), 210 Wis. 222, 246 N. W. 425; *Shulse v. Mayville* (1937), 223 Wis. 624, 271 N. W. 643; *Victora v. Muscoda* (decided May 17, 1938), *ante*, p. 455, 279 N. W. 663.

Upon the authority of these cases it is held that a municipality has no power to make contracts for public improvements unless it proceeds in the manner prescribed by law, and that a contract entered into without complying with the charter provisions is void. The contract being void in its inception, the next question for consideration is whether the fact that it has been completely executed on the part of the contractor gives it vitality as a contract. In *Cawker v. Milwaukee, supra,* that question was presented to the court. The court said (p. 38) :

"In a general taxpayer's action to prevent the unlawful diversion of general city funds the relief sought is for the benefit of the whole body of taxpayers, none of whom in that capacity has received any special benefit. Some may have known of the improvement and others may not. To hold the whole body of taxpayers estopped from questioning the validity of a void contract and preventing the payment of public moneys in discharge thereof because the contractor has done his work would substantially emasculate the principle that general taxpayers may by action in equity set aside unlawful contracts and restrain public officers from paying out public funds in discharge of work done under such con-

tracts. . . . The power to successfully maintain such an action has never been limited to cases where the work has not yet been done, and, if it were, there would be few cases where unfaithful public officials and designing contractors could be prevented from despoiling the public treasury."

In *White Construction Co. v. Beloit, supra,* the validity of a paving contract which was not countersigned by the comptroller as required by sec. 62.15 (12) was under consideration, and it was held that although the work had been fully performed and the plaintiff had received the full contract price for the work and labor done and materials furnished, the contract was void. The court said (p. 338) :

"The city may enter into a valid contract in the way specified by law and not otherwise. This is a limitation upon the right of a city to contract which the legislature has the right to create and we are not disposed to construe it away."

There are other cases to the same effect. It is considered that a contract void in its inception is not validated by performance and remains a void contract.

. Commencing with *Frederick v. Douglas County* (1897), 96 Wis. 411, 71 N. W. 798, there are decisions which hold that, although the contract is illegal, if the money has been paid, a court of equity will not decree its repayment into the public treasury upon a showing of entire good faith. It is argued with considerable force that there is no real distinction to be made with respect to preventing the payment of money on an illegal contract and its recovery where it has been paid out under an illegal contract. It has not been held in any case so far that equitable considerations will prevent a taxpayer from enjoining payment of public funds·out of the public treasury upon an illegal contract.

In *Ellefson v. Smith* (1924), 182 Wis. 398, 401, 196 N. W. 834, in which a judgment of the circuit court denied the right of plaintiff to maintain an action for the recovery

for the benefit of the public treasury of money paid out on an illegal contract, the court said:

"If the action was to restrain execution of the contract or payment thereunder, the action would lie.   [Citing cases.]"

In the *Ellefson Case* prior decisions of the court are reviewed, and the conclusions there stated were arrived at after full deliberation and it is apparent that the court by denying recovery in that case had no intention of impairing the right of a taxpayer to prevent payment of funds out of the public treasury on an illegal contract.

If the court were to hold that a failure to comply with the statute in one material respect did not render the contract void, the question would then arise, Supposing it had been violated in more than one respect what would the situation be?   It is not supposed that failure to comply with every incidental provision of sec. 62.15 would invalidate the contract.   However, a failure to comply with those provisions which are essential to the accomplishment of the legislative purpose are in a different category.   The provisions of sec. 62.15 have been developed out of years of experience in the management and regulation of municipal affairs.   As has been repeatedly said, the obvious purpose of the section is to prevent fraud, favoritism, imposition, and improvidence.   With respect to the advertisement for bids the legislative scheme commits to the municipality a considerable measure of discretion.   The board of public works determines the length of time which in its judgment the advertisement for bids should run, but that time must be "not less than once a week for two successive weeks."   It may be as much longer as the board of public works in its discretion may determine.   If as argued in this case it is held that because it does not affirmatively appear that any taxpayer has sustained a loss or has been injured by the failure to

advertise for the minimum length of time prescribed, payment should not be enjoined, the court in every case where the provisions of the statute are disregarded will be called upon to determine whether or not substantial injury has been sustained. No one will know in such cases whether the contract is valid or void until the matter has been settled by the courts. The conditions under which a municipality may contract will then be fixed not by the legislature but by the court. Whether a court of equity will exercise its powers in cases where the money has been paid out is quite a different question than whether the court should exercise its powers to prevent payment. In the first case the court determines upon what consideration its equitable powers should be exercised. That is a judicial question. In the second case the question is whether a valid mandate of the legislature shall be upheld. That is a matter not committed to the discretion of the court. While the financial result to the municipality would be the same if the right of recovery was granted and the cases would thus be more nearly parallel, the distinction between the two cases has been drawn in the law and maintained for forty years.

It is considered that the established rule should not be departed from in this case. The question of whether the defendant, Federal Paving Company, would be entitled to recover the amount of the benefits which the city of Wauwatosa has received on the theory of unjust enrichment is a question which was not presented by the pleadings, was not litigated upon the trial, and has not been considered in this court. If such right exists it will not be foreclosed by a decree in this case enjoining the defendant city from paying out public funds upon a void contract. In that form of action such rights and equities as the contractor has can be worked out and determined. *Shulse v. Mayville, supra.*

The former mandate of this court is vacated. The judgment of the court below is reversed, and the cause remanded with directions to the trial court to enter judgment in accordance with this opinion.

WICKHEM, J., dissents.

A motion for a rehearing was denied, with $25 costs, on September 13, 1938.