FORD ANDERSON*

*vs.*

CITY OF DANBURY

Superior Court    Fairfield County    File No. 60473

MEMORANDUM FILED JANUARY 27, 1941.

*William Hanna,* of Danbury, for the Plaintiff.

*Thomas Keating,* of Danbury, and *David Goldstein,* of Bridgeport, for the Defendant.

O'SULLIVAN, J. The plaintiff's objective is to obtain an injunction restraining the City of Danbury from maintaining 450 parking meters on three of its streets, and from continuing to honor the terms of a written contract through which the meters were acquired.

It appears that for some time prior to the execution of the contract, the common council had been discussing the advisability of experimenting with parking meters as a method of regulating traffic within a restricted area in the central business section of the city. Debate on this subject culminated on June 4, 1940, in the adoption of a resolution empowering

* See, also, *Anderson vs. City of Danbury,* 8 Conn. Sup. 365.

the mayor and police committee to look over various available meters, and then, to enter into a written contract for the purchase of 450 of the type they should agree upon. Pursuant to this resolution, the mayor and police committee chose the product of the Duncan Meter Corporation, with which it entered into the contract whose validity has been attacked. The plaintiff has expressly limited himself to two claims of law. The first runs to the effect that Main, White and West Streets, on which the meters are located, fall within the trunk line system of highways of the State of Connecticut. Hence, it is urged, as the Legislature has vested in an agency, known as the State Traffic Commission, the power of prohibiting, limiting, or restricting the parking of automobiles on trunk line highways, and as the commission has not given its permission to the city, the latter's installation of the meters was illegal. This claim, it will be observed, is directed not against the validity of the contract, but rather against the alleged invasion by the city of the domain of a state commission, whose authority over parking, it is argued, is exclusive.

The answer to this claim is obvious. While section 420e of the 1939 Supplement to the General Statutes provides that one through route extending approximately north and south and one through route extending approximately east and west through each city shall be included in the trunk line system of highways, and while the streets in question could qualify as through routes, they have not, in fact, been so designated by any authoritative agency. Until such a designation has been made, the right to regulate parking on Main, White and West Streets belongs to the City of Danbury.

The second of the plaintiff's claims is that the contract between the city and the Duncan Meter Corporation is illegal, because it violates chapter 485 of the Special Acts of 1935. The pertinent provisions of this Act, which amends the charter of the City of Danbury, may be summarized as follows: There is created a new official to be known as the city purchasing agent. He is designated as the officer charged with purchasing for the city all needed supplies, materials and equipment costing in excess of five dollars. Whenever any department or board requires any personal property, a requisition of the desired articles must be filed with the agent and the latter must purchase them at the lowest price obtainable, although the actual payment must be made by the city treasurer upon receipt of a certified voucher from the agent. Where

purchases amount to over $200, competitive bidding must be held, and a written contract must be executed by the successful bidder and the agent. No contract may be signed until the agent receives from the city treasurer a certificate to the effect that, in the particular appropriation to be charged, there are sufficient funds on hand to meet the obligations under the proposed contract of purchase.

The plaintiff argues that the meter contract, providing, as it does, for the purchase of equipment for city needs, could not legally have been executed on behalf of the city by any other official than the purchasing agent.

Because of the view which I take, it is not necessary to solve this rather vexed claim of law. It so happens that the plaintiff is in no position to attack the contract, even though its illegality be admitted. A well grounded rule of law stands in his way. In instituting this action, the plaintiff predicated his right to do so on his status as a taxpayer. However, even in such a role he is precluded from obtaining equitable relief unless he can demonstrate that, either directly or indirectly, he has been or will be affected pecuniarily. An injunction to interrupt or make void the acts of municipal corporations or their officials, even though illegal, will not be granted un-less it appears that the complaining taxpayer has been or with reasonable probability will be injured by the acts which he challenges. *Kimberly vs. Madison,* 127 Conn. 409; *Williams vs. Mayor, etc., of Baltimore City,* 128 Md. 140, 158, 97 Atl. 140, 145; *Bell vs. City of Platteville,* 71 Wis. 139, 36 N.W. 831; 2 *High, Injunctions* (4th ed., 1905) §1298; 6 *McQuillin, Municipal Corporations* (2nd ed. Revised 1937) §2750, and a long list of cases cited by *High* and *McQuillin.*

The reason why the plaintiff cannot establish that he will suffer financially is due to a most unusual provision in the contract concerning the manner in which payment for the meters is to be made by the city. At regular intervals the coins deposited in the meters by the parking public are to be collected and then, segregated by the city into a special fund. Twice a month, there is to be drawn from this fund 50 per cent of the accumulations of the preceding 15 days and this amount is then to be turned over to the seller. The latter must apply these sums to the purchase price and when that has been fully paid, the meters become the property of the city. Under this plan, conceived, no doubt, in the fertile

mind of an ingenious lawyer, no burden falls upon the city treasury nor upon this plaintiff as a taxpayer. It may be that a different conclusion might be reached, had he based his right to relief on the ground that he was compelled to pay tribute to the parking meter. But in the position he occupies he cannot prevail, because neither directly nor indirectly, in his capacity as a taxpaying contributor to the city treasury, has he been nor will he be affected in any pecuniary manner.

Accordingly, judgment may enter for the defendant. No costs shall be taxed.