STATE EX REL. GROSVOLD, Respondent, vs. BOARD OF SUPER-
VISORS OF EAU CLAIRE COUNTY, Defendant: GRUDEM
BROTHERS COMPANY, Appellant.

*March 5—March 31, 1953.*

520

522

For the appellant there were briefs by *Stafford & Stafford* of Chippewa Falls, and oral argument by *Harold E. Stafford*.

For the respondent there was a brief by *Dennis B. Danielson, William H. Frawley,* and *Arthur B. Sullivan,* all of Eau Claire, and oral argument by *Mr. Danielson* and *Mr. Sullivan.*

CURRIE, J.   Sec. 59.07 (4) (c), Stats., relating to the powers of county boards, provides that "All public work, including any contract for the construction, . . . of any public . . . building . . . shall be let by contract to the lowest responsible bidder, . . ." The first question raised on this appeal is whether the county under such statute may accept a combination bid, such as was submitted by Grudem Brothers Company covering both the heating and plumbing

on a county-building project, when the county invited the submission of bids upon the heating and plumbing under a plan of contract letting and explicit instructions requiring the submission of separate bids as to such heating and plumbing.

The decision of this court in *Chippewa Bridge Co. v. Durand* (1904), 122 Wis. 85, 99 N. W. 603, sets forth the tests or criteria to be used in determining whether the statutory requirements for the letting of public work to "the lowest responsible bidder" have been complied with. Those criteria pertinent to the issue now before us were stated as follows (pp. 97, 98) :

"First in order is the one requiring the work to be let to the lowest reasonable and responsible bidder. . . . In *Maset v. ,Pittsburgh,* 137 Pa. St. 548, 20 Atl. 693, it was held that a requirement for public work to be let to the 'lowest bidder necessarily *implies a common standard by which to measure the respective bids,* and that common standard must necessarily be previously prepared specifications of the work to be done and materials to be furnished, etc., specifications freely accessible to all who may desire to compete for the contract and upon which alone their respective bids must be based.' We indorse that. . . .

"*A second essential contained in the charter is that the plans and specifications and terms, submitted as a basis for the bids, shall not be changed except in such manner as to affect all bidders and persons desiring to bid alike;* that in case of a substantial change, either in the character of the structure or the terms of the proposed contract after the first competition shall have been completed, there shall be a second opportunity given to bid upon the new basis." (Emphasis supplied.)

In the *Chippewa Bridge Co. Case* bids were requested by the defendant city for a bridge superstructure and three bridge companies submitted bids. Subsequently, one of the bidders by negotiation with the city reduced its bid and certain concessions were made to it which changed the terms of the contract from those stated in the written request by the

mayor for bids. Therefore, the reference in the foregoing quotation from the decision in that case to change of "terms" has particular reference to change in the contract terms and not in the bidding terms, but nevertheless by analogy the reason advanced against change in terms of the contract would apply with equal force to change in the bidding terms made known to but one bidder or effected after the bids were received and opened in order to qualify a bid which otherwise would have been ineligible. As pointed out in the decision in the *Chippewa Bridge Co. Case,* there must be a common standard by which to measure all the bids, and without that there is not present the necessary element of equal opportunity afforded to all bidders to bid on the same basis which is implied in the statutory requirement, of letting the work "to the lowest responsible bidder."

In *Bechthold v. Wauwatosa* (1938), 228 Wis. 544, 564, 277 N. W. 657, 280 N. W. 320, the court was considering a letting of public work under sec. 62.15, Stats., which requires cities to let public work "to the lowest responsible bidder," and stated with respect to the objective of such statute:

"The provisions of sec. 62.15 have been developed out of years of experience in the management and regulation of municipal affairs. As has been repeatedly said, *the obvious purpose of the section is to prevent* fraud, *favoritism,* imposition, and improvidence." (Emphasis supplied.)

To have awarded the contract for the plumbing and heating in the instant case to Grudem Brothers Company upon their combination bid, when all the other bidders submitted separate bids for the plumbing and separate bids for the heating as required by the bidding instructions, would be an act of "favoritism" which this court in *Bechthold v. Wauwatosa, supra,* stated that statutes, such as secs. 62.15 and 59.07 (4) (c), were enacted to prevent.

While this is apparently a case of first impression in this state on the question of the right of a municipal corporation to accept a combination bid unauthorized in the notice soliciting bids and instructions to bidders, the decision of the New Jersey supreme court in *Pew v. Chester* (1921), 96 N. J. L. 45, 114 Atl. 151, did directly pass upon such question. In that case the public body (the commissioners of a fire district) solicited separate bids for a motor truck, the pumping outfit to be installed thereon, and the body to be placed on the truck equipped to carry hose. Further facts and the determination of the court thereon appear in the following quotation from the New Jersey court's opinion (p. 46):

"The proofs show, and it is not denied, that not one bid was received in which the truck, the pumping outfit, and the body equipped to carry hose were priced separately. Two bids were received for the complete apparatus, and one of these, the Obenchain Boyer bid, was accepted as the lowest. It must be obvious that if the advertisement called for separate pricing of the component parts of the truck, the award was illegally made; *for, if the contract is awarded on some other basis than that advertised, the bidders are not on the same footing, and this is the express purpose of the statutory competition.* [Citing cases.] It is no answer to say that both bids were for a lump sum; for there is no telling how many other and lower bids there might have been on that advertised basis." (Emphasis supplied.)

It is argued in the instant case that the county was not hurt by the submission of the combination bid, but, on the contrary, it stood to benefit by the submission thereof if the same were accepted because of it being lower than the aggregate amount of the lowest separate bid for the plumbing plus the lowest separate bid for the heating. However, to paraphrase the language of the New Jersey court in *Pew v. Chester, supra,* "there is no telling how many other and lower bids there might have been" if the county in its instructions to bidders had authorized the submission in the alternative of

combination bids as well as separate bids. The defendant Board of Supervisors took cognizance of this possibility of saving money for the taxpayers of the county when it advertised for bids for the heating and plumbing the second time pursuant to the peremptory writ of mandamus because, as set forth in its return to such writ, the new bids were solicited on such alternative basis.

The defendant Grudem Brothers Company contends it was entitled to submit a combination bid because of the alleged fact that before submitting its bids it privately contacted the architect and was informed by the latter that combination bids were acceptable, and therefore any other bidder could have done the same. The answer to this is that other bidders had a right to rely on the bidding instructions which specified that only separate bids on each branch of the project were to be submitted, and the architect had no legal authority under the statute to vary such bidding instructions.

It is, therefore, our conclusion that the learned trial court rightly determined the controversy upon the merits in the instant case in holding that the act of Grudem Brothers Company in submitting a combination bid was unauthorized and that the acceptance thereof would violate the statute. There remains, however, the further question raised by Grudem Brothers Company both in the trial court and in this court that mandamus does not lie to achieve the relief sought by petitioner, but rather a proceeding for injunction.

The general principles regarding the availability of mandamus in proceedings involving the awarding of public contracts are set forth in 34 Am. Jur., Mandamus, p. 936, secs. 159, 160. The author of the annotation on the subject of "Mandamus—Public Contracts," 80 A. L. R. 1382, 1397, states:

"No case has been found in which a writ of mandamus has been sought solely to compel the rejection of a particular bid

for public work; nor in which such a writ has been sought to compel the rejection of all bids."

However, we find it unnecessary in this case to determine whether a proceeding in mandamus is proper because the defendant Board of Supervisors did not appeal from the peremptory writ but instead filed a return stating that it had complied with all the provisions thereof. The peremptory writ did not command the defendant Grudem Brothers Company to do anything. If we were to determine that mandamus was not the proper proceeding, but rather an action for injunction, this court under the provisions of sec. 269.52, Stats., covering cases of "mistaken remedy or action," would be required to remand the case to the trial court to permit plaintiff to amend. This court in *State ex rel. Conway v. District Board* (1916), 162 Wis. 482, 489, 156 N. W. 477, held such statute applicable to mandamus. It would appear to be the height of futility to remand in this case where the merits of the controversy have been determined and the only objective that might be attained thereby would be to change the type of affirmative relief granted. Grudem Brothers Company has no interest in such relief but only in the determination on the merits that it does not have a valid contract based upon the alleged acceptance of its combination bid. The Board of Supervisors is the only party affected by the commands of the writ and it has not appealed therefrom, but, on the contrary, has fully complied therewith.

*By the Court.*—Judgment affirmed.

BROADFOOT, J. (*dissenting*). The statute involved in this case is sec. 59.07 (4) (c), which provides that a contract for public works shall be let to the lowest responsible bidder. The case of *Chippewa Bridge Co. v. Durand,* 122 Wis. 85, 99 N. W. 603, is relied upon by the majority of the court. That case is not in point. No attempt was made to comply with the

statute in that case. After the bids had been received there were private negotiations with one of the bidders, the specifications were altered, and the work was awarded without competitive bid on the changed specifications. The only applicable rule to be taken from that case is that substantial compliance with the statute is required in awarding such contracts.

The majority also rely upon the case of *Pew v. Chester,* 96 N. J. L. 45, 114 Atl. 151. The rule appears to be otherwise in Kentucky, Massachusetts, and Ohio, and the general rule is stated in 63 C. J. S., Municipal Corporations, p. 826, sec. 1151, as follows:

"Also, in the absence of fraud, collusion, and prejudice, the fact that single bids for the entire improvement, rather than separate bids for parts thereof as required, are submitted is not fatal."

Too much reliance cannot be placed upon cases from other jurisdictions without a complete analysis of the statutes involved. We must keep in mind our own statute, the rule that there must be a substantial compliance therewith, and the general purpose of the statute. It is clear that the purpose of the statute is to secure economy in the construction of public works; it is to prevent favoritism, fraud, and extravagance; the specifications for the work must be available to all bidders, and all bids must be based upon the plans and specifications without change. Unless there is a violation of one of those rules it is the duty of the governing body to let contracts at the lowest cost to taxpayers.

In this case separate bids were called for. It is apparent that if one contractor had the contracts for both heating and plumbing he could afford to do the work at a lower figure than if he had but one contract. In the instant case the defendant Grudem Brothers Company did what any alert bidder would do and submitted a combined bid that was lower than the total low bids for separate contracts. By accepting the bid

the county board could save its taxpayers a substantial sum of money. Both the plumbing and heating had to be completed in exact accord with the plans and specifications. Certainly no taxpayer was harmed by the action of the bidder or the county board. In many cases time is of the essence in awarding public contracts and there is not time to readvertise and accept new bids. That it may have been possible in the instant case is no reason for establishing a hard and fast rule that may be very detrimental to the public in the future.

It is apparent, too, that mandamus was not the proper remedy, and this question was properly raised in the trial. It is no answer to say that this question is moot merely because the county board chose to abide by the order.