MATTHEW F. ANICH, District Attorney Ashland County
You request my opinion on the following questions:
 1. Where the county proceeds under sec. 75.69, Stats., to sell tax delinquent real estate acquired by the county pursuant to secs. 75.35, 75.36, Stats., where lands are located within the boundaries of the Chequamegon National Forest or Bad River Indian Reservation, and where a private individual, who is not the former owner or heir thereof, bids $2,000, an amount in *Page 2 
excess of the appraised value, and the federal government bids $3,000 for a given parcel, can the county accept the bid from the private individual, even though such bid is lesser on a pure monetary basis, on the theory that such bid is "more advantageous" to the county since the real estate would then be on the tax roll?
 2. Where the county proceeds under sec. 75.69, Stats., to sell tax delinquent real estate acquired by the county pursuant to secs. 75.35, 75.36, Stats., and the land consists of an isolated parcel of unusual dimensions, presently without road access and is substandard in size and would not permit construction under present zoning codes, and where all bids are in excess of the appraised value, the highest being from a "non local [sic] resident," could the county reject all bids and sell the parcel to the adjacent land owner, who was not the former owner or heir thereof, for $1.00 over the otherwise high bid of the "non local resident."
You do not define "non local [sic] resident," however, I take it to mean someone not a resident of the immediate area where the land is located or at least not a resident of the county or counties adjacent to Ashland County.
Under the facts stated in your first question, it does not appear that there would be a binding commitment that the land would continue to be taxable, or that taxes levied would be timely paid. Such purchaser might immediately sell the property to another, to a tax exempt entity, or might qualify the parcel for some tax exempt status.
Section 75.69 (1), (2), Stats., provides:
 (1) Except in counties having a population of 500,000 or more, no tax delinquent real estate acquired by a municipality as defined in s. 75.35
(1) (a), shall be sold unless the sale and appraised value of such real estate has first been advertised by publication of a class 3 notice, under ch. 985. Any such municipality may accept the bid most advantageous to it but every bid less than the appraised value of the property shall be rejected. Any such municipality is authorized to sell for an amount equal to or above the appraised value, without readvertising, any land previously advertised for sale. *Page 3 
 (2) This section shall not apply to exchange of property under s. 59.97 (8), to withdrawal and sale of county forest lands, nor to the sale or exchange of lands to or between municipalities or to the state.
None of the opinions of this office which have considered sec.75.69 (1), Stats., have dealt with the meaning of the phrase "may
accept the bid most advantageous to it." See 36 Op. Att'y Gen. 454 (1947), 60 Op. Att'y Gen. 425 (1971), 67 Op. Att'y Gen. 150, 236 (1978). The statute is clear in providing that there must be an appraisal of the property before sale, advertisement of "the sale and appraised value," and that "every bid less than the appraised value of the property shall be rejected." In my opinion, the Legislature used the word "may" in the phrase in sec. 75.69 (1), Stats., to permit rejection of any and all bids including those above the appraised value. There may be circumstances in a rapidly changing economy where bids at or above the appraised value may not be adequate and the committee or official in charge of the sale might deem it to be in the best interests of the county to seek a new appraisal. It is my further opinion, however, that sec. 75.69 (1), Stats., does not require the county to accept the highest bid but grants the county discretion to "accept the bid most advantageous to it" above the appraised value. If the Legislature had intended that the county must accept only the highest bid above the appraised value it would have used that language. Its determination of which bid is most advantageous to the county must be made in good faith without fraud.
Although Hermann v. Lake Mills, 275 Wis. 537, 82 N.W.2d 167
(1957), was not concerned with the sale of tax delinquent property, it was there stated that whereas a city could not make a gift of municipal property to an industrial corporation for the purpose of aiding industrial growth in the community, the consideration to support a sale need not totally consist of money. The property there involved was not tax delinquent land but was land no longer needed for park purposes. In Hermann,275 Wis. at 540, 541, the court stated:
 In making sale of such parcel, the council was not required to solicit bids and sell to the highest bidder, and therefore, necessarily is vested with considerable discretion in the matter.
. . . . *Page 4 
 This brings us to the crucial question on this appeal, viz., what are the grounds upon which taxpayers of a city may successfully attack a sale of municipal property authorized by vote of the common council? We deem the proper answer to be that the plaintiff taxpayers must establish illegality, fraud, or clear abuse of discretion on the part of the governing board of the municipality, which has authorized the sale, before a court will void the sale.
In 72 Am. Jur. 2d State and Local Taxation sec. 933, it is stated:
 A statutory requirement that the sale of lands for delinquent taxes be a "public sale" necessitates that an opportunity be given for competitive bidding. Apart from such a statutory dictate, the principle that property being sold at a judicial sale should be sold to the highest bidder applies to sales of land for taxes.
Whereas sec. 75.69 (1), Stats., does not require sale to the highest bidder, it does contemplate, except as provided in subsec. (2), for public sale on notice. In my opinion there must be opportunity for competitive bidding on a common standard. The situation is somewhat akin to bidding on public contracts. InState ex rel. Grosvold v. Board of Supervisors, 263 Wis. 518,523, 58 N.W.2d 70 (1953), it was stated that a requirement for public work to be let to the "lowest" bidder implies a common standard by which to measure the respective bids, and that common standard must necessarily be previously prepared specifications which are freely accessible to all who may desire to compete for the contract and upon which their bids must be based and that such specifications not be changed without equal opportunity to all. See also 56 Op. Att'y Gen. 181, 186 (1967).
Section 75.35 (3), Stats., authorizes a county to provide by ordinance for a preference in the sale of tax-deeded lands in favor of the former owner or his or her heirs. Such ordinance may provide that such sale be exempt from the provisions of sec.75.69, Stats. We are not concerned with such an ordinance. In 35 Op. Att'y Gen. 40 (1946), the preference in sec. 75.35 (3), Stats., was referred to, and it was stated that a county could not provide for the sale of tax-deeded lands to veterans at a price less than the lands could be sold to others. Section 75.69, Stats., was not in existence in 1946. Nevertheless, it is *Page 5 
my opinion that there is nothing in such section which would permit discrimination in favor of local residents, adjacent landowners, or persons whose real estate is not exempt from taxation. It is my opinion, however, that the criteria set forth below, which may include (1) dollar amount of respective bids, (2) proposed use of property, and (3) whether the land will be subject to real estate taxes, can be applied, under specific fact situations, without discrimination in favor of local residents, adjacent landowners, or persons whose real estate is not exempt from taxation.
My answer to question one is yes, if the county in advertising such land for public sale by bids has set forth criteria to be considered in acceptance of bids under the "most advantageous" to the county standard referred to in sec. 75.69 (1), Stats., and if county officials otherwise act in good faith with respect to such sale. Criteria might include notice that the county board will consider the dollar amount of the respective bids, the use to which the property is to be put, and whether the land will be subject to real estate taxes.
My answer to question two is no. Under the stated facts, the adjacent landowner does not appear to have been a bidder. Whereas I am of the opinion that the county could not discriminate against a "nonlocal resident" even where the adjacent landowner was a bidder by selling to such landowner at $1.00 over the next highest bid, I am of the opinion that sale to an adjacent landowner, who was a bidder, could be made at a higher or lower amount than the highest bid above the appraised price if the notice of sale sets forth reasonable special criteria to be considered by the county board in the acceptance of bids under the "most advantageous" to the county standard. In addition to the amount of money, prospective use and liability for real estate tax criteria referred to above, reference should probably be made to the lack of buildability under present zoning codes and present lack of access if the board will consider such items in its determination. Whether residential, agricultural, or private recreational development of such "isolated parcels of unusual dimensions, presently without road access and substandard in size" located within the boundaries of a national forest or Indian reservation is advantageous to the county is debatable. A county board may, however, consider costs of providing services and road access and potential revenue from assessments and real estate taxes under the proposed uses as well as the *Page 6 
dollar amount of bids in determining which bid is most advantageous to the county.
BCL:RJV